## SOONER FREIGHT LINES v. LESTER.

No. 32820.  Sept. 9, 1947.

Rehearing Denied Oct. 21, 1947.

*185 P. 2d 469.*

Meacham, Meacham, Meacham & Meacham, of Clinton, for plaintiff in error.

Arney & Barker, of Clinton, for defendant in error.

DAVISON, V.C.J.  This is an action wherein plaintiff, Mrs. Clinton Lester, seeks to recover for damages and loss of personal property by the defendant, Sooner Freight Lines, a corporation, engaged in the business of a common carrier for hire.  The cause was originally tried in the justice of the peace court where judgment was rendered for plaintiff for the full amount claimed, to wit: $168.17.  A trial de novo was had in the district court on appeal, resulting in a like judgment for plaintiff.

Defendant has perfected this appeal. We will continue to refer to the parties to this appeal by their trial court designation.

The facts disclosed by plaintiff's testimony are substantially as follows: On September 7, 1945, plaintiff was a resident of Clinton, Okla., but on said date was moving to Oklahoma City, Okla. That she called the Clinton Transfer & Storage Company for the purpose of having them transport a baby bed and a carton containing goods, bed clothing, and wearing apparel, from her residence in Clinton to her new residence in Oklahoma City. That on said date a truck driver, with a Lee Way truck, came to pick up the baby bed for transporting. That plaintiff told the driver she had called the Clinton Transfer & Storage Company and that the driver then informed her that "they were working together."  That at a later hour of the same day, in the absence of plaintiff from her Clinton residence, the carton of goods was picked up by truck, and Mrs. Fisher, who was moving into the house being vacated by plaintiff, accepted and signed plaintiff's name to a bill of lading, about which the plaintiff knew nothing, and knew nothing about the contents of the bill of lading, until several weeks later when she filed her claim with the defendant for the loss sustained.  That when plaintiff did not, within a reasonable time, receive the carton of goods, she called the office of the Clinton Transfer & Storage Company about the non-delivery, and they referred her to the defendant.  That this was the first time she knew the defendant had anything to do with the shipment.  That she then took up the matter with defendant.  That she paid $1.77 freight and delivery charges on the baby bed when same was delivered because she was unable "to get the baby bed without paying for it".  That she paid no freight on the lost carton. That her loss was $5 damages to the baby bed and $163.17 for the complete loss of the items in the carton which was never delivered.

Plaintiff's testimony further disclosed that at the request of the employee in charge of defendant's lost article department, she filled out a claim which showed her loss in the amount of $168.-17; that she signed the claim which the employee prepared for her signature.

The evidence further shows that after the claim was signed and left with the defendant company, a check was sent her in the sum of $10.50 which represented the payment by defendant for 105 pounds of lost merchandise at the rate of ten cents per pound. This check was still in the possession of plaintiff, and uncashed, at the time of trial.

For reversal, defendant contends that its liability is limited by the terms of the bill of lading to $10.50, the amount of the check given plaintiff, and further, that the acceptance and retention of said check by plaintiff constituted an accord and satisfaction and discharged defendant from further liability. Defendant contends that it had several tariff rates and that plaintiff's property was shipped at the lowest rate, by virtue of which defendant's liability was limited as provided in the bill of lading, as follows:

"Note (Release valuation of household goods, furniture and personal effects not to exceed 10 cents per pound.)"

In support of its first contention defendant relies on the following cases: Chicago, R. I. & P. Ry. Co. v. Geissler, 177 Okla. 560, 61 P. 2d 14; American Ry. Express Co. v. Lindenburg, 260 U.S. 584, 67 L. Ed. 414; Railway Express Agency v. Stephens et al., 183 Okla. 615, 83 P. 2d 858; Missouri K. & T. Ry. Co. v. Walston, 37 Okla. 517, 133 P. 42; Missouri O. & G. Ry. Co. v. Porter, 41 Okla. 702, 139 P. 954.

We have no fault to find with the above-cited cases and think they are correct. They are all to the general effect that a special contract entered into between a common carrier and shipper, in consideration of a lower freight rate, providing that in case of loss or damage to the property the liability of the carrier shall not exceed a maximum valuation per 100 pounds, is not a contract in violation of law, and that if the contract is reasonable and just, and has been fairly entered into by the shipper, the same will be upheld as a proper and lawful means of determining the amount of the carrier's liability in case of loss.

The cited cases by defendant, however, are not applicable to the case at bar because of entirely different factual situations. The cited cases are each based on a factual situation wherein the defendant relies on a contract which has been fairly entered into between the parties. Some of the distinguishing features in the case at bar are as follows:

(1) The plaintiff never at any time entered into any sort of a contract with this particular defendant. She had been negotiating with the Clinton Transfer & Storage Company and not the defendant. The defendant undertook to transport property without the knowledge of plaintiff that it was going to do so.

(2) Plaintiff was not at home when defendant came for delivery of the carton of merchandise and had no understanding with defendant relative to the shipment, or cost thereof. Defendant does not allege nor prove that Mrs. Fisher was the agent of plaintiff.

(3) Defendant never at any time quoted to plaintiff any freight rates and no particular rate for shipment was agreed to by plaintiff. The "rate" was placed in the bill of lading by the "rate clerk" of the company in Oklahoma City and at a time after the bill of lading reached there.

Considering the above facts and circumstances, as a whole, it cannot be said that a contract for this shipment of goods was fairly entered into between plaintiff and defendant. This burden shifted to the defendant after plaintiff proved her loss. St. Louis &

S. F. R. Co. v. Cox, Peery & Murray, 40 Okla. 258, 138 P. 144. Defendant failed to meet this burden.

Defendant also stresses the fact that the claim which plaintiff signed contained a statement therein to the effect that the release valuation of household goods, furniture and personal effects was not to exceed 10 cents per pound. The evidence disclosed that this claim was prepared by defendant's agent at the request of the defendant company. It is pertinent to note that this claim which was signed by plaintiff indicated plainly that she was claiming $163.17 for the loss of the carton of goods, the contents and value of which she itemized, and $5 for damages to the bed. From a reading of the whole instrument, which plaintiff testified that she did not read, it is convincing that plaintiff had no thought of or intention to be bound by any limitation of loss by a poundage valuation.

Plaintiff proved the value of her damage and loss to be $168.17, and the correctness of the actual loss was not controverted by defendant.

Defendant's contention that the acceptance and retention of the $10.50 check constituted an accord and satisfaction cannot be sustained. The evidence disclosed that plaintiff had never considered the check, which defendant had sent her through the mail, as a payment of her claim. She had never endorsed the check nor had she ever presented same for payment. She had delivered the check to her attorney and it was evidently retained by him for the purpose of proving an attempted settlement of the claim and for the further purpose of eliminating certain necessary proof of the fact that the defendant was in charge of the carton at the time it was lost. Apparently the plaintiff was not interested in the retention of the check but the defendant evidently wanted her to keep it. We have reached this conclusion by reason of the fact that the check was introduced in evidence by the defendant with the request being made by the attorney for defendant to have permission of the court to withdraw the exhibit and return it to plaintiff, or to plaintiff's attorney, with the understanding that a copy be substituted if needed.

Payment of the check could have been stopped at any time by defendant. Checks until presented and paid are revocable by the drawer who has legal control of the money to his credit until actual acceptance or payment of the checks. Citizens' Bank of Gans v. Mabray, 90 Okla. 63, 215 P. 1067.

While it is true that the agreement to accept a check may be implied from the facts and circumstances of the transaction, we are unable to find that under the facts and circumstances in the present case that an accord and satisfaction resulted from the acts and conduct of plaintiff.

The defendant cites several cases from other jurisdictions to support its contentions, and while there is some conflict on the question, we are inclined to believe the facts in the case of Wheeler & Motter Merchantile Co. v. Kitchen et al., 67 Okla. 131, 169 P. 877, to be somewhat analogous and in favor of plaintiff's view of the law on this particular point.

The case seems to have been fairly tried and a correct judgment reached by the trial court.

Judgment affirmed.

HURST, C.J., and WELCH, CORN, and LUTTRELL, JJ., concur.