**E. P. HEFNER, Plaintiff in Error,**
v.
**J. I. OWENS, d/b/a Owens Transfer, its agents, servants, and employees, Defendants in Error.**

No. 36223.

Supreme Court of Oklahoma.

Feb. 15, 1955.

Rehearing Denied March 15, 1955.

Lynn W. Norman, Sulphur, Hardin Ballard, Purcell, for plaintiff in error.

Grigsby, Foliart & Hunt, Oklahoma City, for defendant in error.

WILLIAMS, Vice Chief Justice.

This action was brought by E. P. Hefner, plaintiff, against J. D. Owens, d/b/a Owens Transfer, defendant, for damage to plaintiff's household goods which goods were being transported by defendant when they were destroyed by fire. Plaintiff seeks damages in the sum of $3,721, which it is alleged was the value of the goods damaged or destroyed. Defendant contends that his liability for such damage is limited to the sum of $1,200 by virtue of a contract between the parties and the applicable rules and regulations of the corporation commis-

sion. Upon a trial being had to a jury, the trial court sustained defendant's motion for a directed verdict and directed a verdict for plaintiff in the amount of $1,200. Plaintiff's motion for new trial was overruled and he appeals upon a claim of insufficiency of the amount recovered.

The record reveals that on April 26, 1952, plaintiff employed defendant to move his household furniture and personal goods from Oklahoma City to Sulphur, Oklahoma. In the process of moving, defendant's van caught fire and plaintiff's goods were damaged or destroyed thereby to the alleged extent of $3,721. The parties entered into the following stipulation:

"That the following facts are true and correct:

"That on or about the 26th day of April, 1952, the Defendant, J. I. Owens, who was then operating and managing the business designated as T. F. Owens, d/b/a Owens Transfer Company, and who was then operating the truck owned by this company, did transport the household goods of the Plaintiff, E. P. Hefner and that a fire occurred which destroyed a portion of these household goods. That prior to the 26th day of April, the date upon which these goods were transported, a contract was entered into between the Plaintiff and the Defendant by which contract it was agreed that the Defendant and T. F. Owens, d/b/a Owens Transfer Company would transport the Plaintiff's household goods from Oklahoma City to near Sulphur, Oklahoma, and that the Defendant was employed to so transport these goods. That this contract further provided that the weight of the goods to be transported was 4,000 pounds and that the rate to be paid by the Plaintiff for the transportation thereof was $1.63 per hundredweight, and that the total sum of $65.20 was paid or was to be paid by the Plaintiff for the transportation of the plaintiff's household goods and the Defendant accepted such employment to transport said goods and household effects and Defendant was engaged in

transporting such household goods, property, and effects as aforesaid, at the time aforesaid when the fire occurred.

"That after said contract had been entered into the Defendant, J. I. Owens, prepared a Bill of Lading, a copy of which has heretofore been attached to the original Answer of Defendant filed in this case and marked Exhibit A. That this document was not presented to nor signed by the Plaintiff until after the fire and loss had occurred. That it will not be disputed that the Court may take judicial notice and knowledge of the rules and regulations of the Corporation Commission of the State of Oklahoma as relating to common carriers. * * *

"That at the time of this loss the Defendant was the manager, operator, and employee of T. F. Owens, d/b/a Owens Transfer Company, which, at said time, was a duly licensed, Class B Motor Carrier in the State of Oklahoma, operating under Permit No. 8299, issued by the Corporation Commission of the State of Oklahoma."

Plaintiff testified that when the arrangement was made for the transportation of his household effects, that neither he nor the defendant made any reference to the value of the property to be transported. Upon defendant's objection to plaintiff's testimony as to the value of each item of said property destroyed or damaged being sustained, plaintiff rested his case. Defendant thereupon demurred to plaintiff's evidence as relating to any damages in excess of $1,200. The trial court sustained such special demurrer and upon an instructed verdict returned, entered judgment for plaintiff for the sum of $1,200.

Plaintiff urges error on the part of the trial court in refusing to admit plaintiff's evidence as to the value of the goods damaged or destroyed and in sustaining defendant's demurrer and directing a verdict limiting defendant's liability to $1,200. Plaintiff argues that the liability of a common carrier for a breach of its obligation cannot be limited by it except by virtue of a special contract, which contract must be supported by specific consideration, must be reasonable and just and fairly entered into by the shipper. Plaintiff further contends that no special contract was entered into limiting defendant's liability for the loss in question and that plaintiff is therefore entitled to recover the full amount of his loss.

Defendant contends that it was not necessary that plaintiff sign the bill of lading or enter into any contract covering the declared value, but that plaintiff, having contracted with the defendant for the shipment of his goods at a specific rate, without declaration of value by him, is bound by the implications arising from the rate, namely, the declared value for this rate classification set forth by the Corporation Commission. In support of this contention, defendant cites and relies upon the case of Chicago, R. I. & P. R. Co. v. Geissler, 177 Okl. 560, 61 P.2d 14, and apparently the trial court relied on such case in adopting defendant's view of this case. In this, however, the court erred, since the Geissler case, supra, involved an interstate shipment of goods, whereas the case at bar concerns an intrastate shipment.

■ Where the carrier's liability is governed by Federal legislation, the provisions thereof relating to the limitation of such liability are, of course, controlling. By the Act of Congress of June 29, 1906, 34 St. at L. 584, 49 U.S.C.A. § 20(11), generally known as the Carmack Amendment to the Interstate Commerce Act, and subsequent amendments thereto, Congress has assumed control of the subject of the liability of carriers for the loss or injury of property in interstate traffic to such an extent as to supersede and render inoperative all state laws and regulations relating to the limitation of the liability of common carriers. Adams Express Co. v. Croninger, 226 U.S. 491, 33 S.Ct. 148, 57 L.Ed. 314; Missouri K. & T. R. Co. v. Harriman, 227 U.S. 657, 33 Sup.Ct. 397, 57 L.Ed. 690; Kansas City Southern R. Co. v. Carl, 227 U.S. 639, 33 Sup.Ct. 391, 57 L.Ed. 683. In cases involving the limitation of liability of common carriers in interstate commerce such as was the Geissler case, supra, we are therefore bound to disregard the laws and regu-

lations of the State of Oklahoma in such regard and apply and follow the pertinent federal laws and regulations. St. Louis & S. F. R. Co. v. Bilby, 35 Okl. 589, 130 P. 1089; St. Louis & S. F. R. Co. v. Cox, Peery & Murray, 40 Okl. 258, 138 P. 144. Therefore in the Geissler case, supra, we disregarded the Oklahoma statutes and applied the appropriate federal statutes and decisions and held that the uniform bill of lading constituted the contract of the parties and that the signature of the shipper was not required to bind him to the terms thereof.

In the case at bar, however, which involves an intrastate shipment, we are bound to apply and follow the appropriate statutes of the State of Oklahoma and the prior decisions of this court dealing with such shipments.

13 O.S.1951 § 131 provides that a common carrier is liable for all loss of or injury to goods entrusted to it except such as arise from an Act of God, or of the public enemy, or the inherent nature or quality of the goods, or the act or fault of the owner or shipper.

13 O.S.1951 § 14, provides that the obligations of a common carrier cannot be limited by general notice on his part, but may be limited by special contract.

13 O.S.1951 § 91, provides that a bill of lading is an instrument in writing signed by a carrier, describing the freight so as to identify it; stating the name of the consignor and the terms of the contract for carriage and providing what provisions may be included therein with reference to conditions precedent to recovery for loss, damage, injury or delay.

13 O.S.1951 § 94, provides that a bill of lading does not alter the rights or obligations of the carrier, as defined by statute, unless it is plainly inconsistent therewith.

13 O.S.1951 § 95, provides that a carrier must subscribe and deliver to the consignor, on demand, any reasonable number of bills of lading, of the same tenor, expressing truly the original contract for carriage.

13 O.S. 1951 § 16, provides that a consignor or consignee by accepting a bill of lading or written contract for carriage, with knowledge of its terms, assents to the rate of hire and the time, place and manner of delivery therein stated, but that his assent to any other modification of the carrier's rights or obligations contained in such instrument can only be manifested by his signature to the same.

It should be noted that by virtue of the last-mentioned statute a bill of lading or written contract for carriage which contains a limitation of liability on the part of the carrier must be signed by the shipper before such limitation will be given effect, which is, of course, contrary to the rule applicable to interstate shipments as set out in the Geissler case, supra.

■ The above-mentioned statutes have been consistently interpreted and applied by this court in cases involving damage to intrastate shipments of goods, with the result that the rule has long been established in such cases that a special contract executed between carrier and shipper, in consideration of a lower freight rate, providing that in case of loss or damage to the property the liability of the carrier shall not exceed a certain maximum valuation per 100 pounds, is not a contract in violation of law, and that if the contract is reasonable and just, and has been fairly entered into by the shipper, the same will be upheld as a proper and lawful means of determining the amount of the carrier's liability in case of loss. Missouri, O. & G. R. Co. v. Porter, 41 Okl. 702, 139 P. 954; Sooner Freight Lines v. Lester, 199 Okl. 321, 185 P.2d 469, 470. This is the rule contended for by plaintiff, and we are of the opinion that it is the rule applicable to this case.

■■ Since there is no evidence in the case at bar of any special contract fairly entered into by plaintiff limiting defendant's liability to $1,200, it is apparent that the trial court erred in sustaining defendant's demurrer and instructing a verdict in that limited amount. Furthermore, after plaintiff proved his loss, the burden shifted to defendant to prove a contract between the parties showing therein that the defendant's liability is limited. Sooner Freight Lines v.

Lester, supra; St. Louis & S. F. R. Co. v. Cox, Peery & Murray, supra. In the first paragraph of the syllabus in Sooner Freight Lines v. Lester, supra, we said:

"When transportation company damages and loses goods, shipped intrastate over its lines, and these facts, coupled with the amount of damages, are proven by plaintiff, the burden shifts to the defendant to prove a contract between the parties showing therein that the defendant's liability is limited."

In the case at bar the defendant did not offer any evidence at all, and obviously did not sustain such burden.

Defendant argues that since the evidence reveals that a contract (apparently oral) was entered into between the parties covering the rate to be charged that such contract constitutes a special contract limiting defendant's liability because the shipping rate agreed on was the one provided for by order of the corporation commission for shipments where the declared valuation is not over 30 cents per pound per article. In other words, defendant contends that the rate charged by the carrier determines the declared valuation of the goods shipped. Such contention is obviously without merit, however, since under the rules and regulations of the corporation commission the declared valuation of the goods shipped determines what the approved rate to be charged for shipment is to be, rather than vice versa. In any event, neither the corporation commission nor the carrier can make a contract for a shipper without the knowledge and consent of such shipper in violation of the statutes of the state of Oklahoma. The evidence in the case at bar to the effect that no agreement relative to the value of the goods in question was ever even discussed, much less entered into, is uncontradicted.

We conclude that the court erred in refusing to admit plaintiff's evidence as to the value of the goods damaged or destroyed, in sustaining defendant's demurrer to the evidence and in directing a verdict rather than submitting the cause to the jury.

Reversed with instructions to grant plaintiff a new trial.

JOHNSON, C. J., and WELCH, DAVISON and JACKSON, JJ., concur.

CORN, HALLEY and BLACKBIRD, JJ., dissent.