PHILCO CORPORATION *v.* THE FLYING TIGER LINE, INC.

1. Contracts—Rescission—Material Deviation—Shipper.

   A shipper should not be bound by a contract with a carrier and the contract should be rescinded, where a deviation between the agreement and the performance is so material as to completely change the risk and terms of the contract.

2. Contracts—Bill of Lading—Carriers—Deviation.

   A bill of lading is a contract between a shipper and a carrier which defines the rights, duties, exemptions, and limitations of the parties, whether imposed by statute or as the result of voluntary agreement, and when there is such a departure from the contract of carriage as to amount to an unjustified deviation, the bill of lading and all its terms are rescinded.

3. Contracts—Rescission—Material Deviation—Carriers.

   A contract for shipment of goods by airplane should be rescinded and the shipper's recovery for goods damaged in shipment should not be limited to the declared value of 50 cents per pound contained in the air tariffs filed with the Civil Aeronautics Board, if the circuit court determines that shipment of computer "memory cores" by convential aircraft rather than "swing-tailed" aircraft containing suitable loading entrances to permit the memory units to remain upright at all times was a material deviation of the shipping contract and not justifiable (49 USCA, § 1373).

4. Carriers — Aviation — Bailment — Contracts — Damages — Negligence.

   Claim of shipper that recovery for two computer "memory cores" damaged in shipment should not be limited to 50 cents

References for Points in Headnotes

[1] 17 Am Jur 2d, Contracts §§ 482, 488.
[2] 13 Am Jur 2d, Carriers § 265.
   17 Am Jur 2d, Contracts § 503.
[3] 17 Am Jur 2d, Contracts § 503.
[4] 13 Am Jur 2d, Carriers § 336.

per pound, which was the amount specified in the air tariffs filed by the carrier pursuant to the Federal Aviation Act, because the air freight carrier was grossly negligent in shipping the memory units in a horizontal position in conventional aircraft, after it had been told that the units could not be transported or handled in any position except upright and had agreed to use only "swing-tailed" aircraft which contained suitable loading entrances to permit the "memory cores" to remain upright at all times, *held*, without merit, where shipper conceded that there was no case law on the issue and a federal district court has held that gross negligence would not render a tariff inapplicable (49 USCA, § 1373).

Appeal from Wayne, Thomas J. Foley, J. Submitted Division 1 March 4, 1969, at Detroit. (Docket No. 5,535.) Decided June 26, 1969.

Complaint by Philco Corporation, a foreign corporation, and Geoffrey Raymond Peter Norman Valentine, an underwriter at Lloyd's, London, on behalf of himself and all other underwriters at Lloyd's London, subscribing policy No: V 264300, against The Flying Tiger Line, Inc., a Delaware corporation, for damages resulting from the negligent handling of a shipment of goods. Partial summary judgment for defendant. Plaintiffs appeal. Affirmed in part and reversed in part.

*Eames, Petrillo, Wilcox & Nelson,* for plaintiffs.

*Alexander, Buchanan & Conklin (Alex H. Terzian, III,* of counsel), for defendant.

Before: Lesinski, C. J., and Fitzgerald and V. J. Brennan, JJ.

Fitzgerald, J. Philco Corporation made arrangements to purchase sophisticated electronic equip-

ment from Apex Computer Products Co. of California. The equipment included certain "memory cores" which are extremely intricate units of electrical apparatus and are valued at about $140,000 each. Because of their unique component parts, these memory cores cannot be transported or handled in any position except upright.

Philco engaged The Flying Tiger Line to transport the memory units from Culver City, California, to Willow Grove, Pennsylvania, by air freight. Philco claims that it expressly pointed out that it was absolutely necessary to carry the memory cores in an upright position and that it would be necessary to use aircraft with adequate doors and of sufficient height to assure that the units would not be loaded or carried horizontally. Philco claims it was assured that only "swing-tailed" aircraft would be used, containing suitable loading entrances to permit the memory cores to remain upright at all times.

Two shipments are involved in this case: September 7, 1963, and March 28, 1964. Air bills of lading for freight transport to Philco were obtained for each shipment. Each of the air bills provided that:

"It is mutually agreed that the goods herein described are accepted in apparent good order (except as noted) for transportation as specified herein, subject to governing classifications and tariffs in effect as of the date hereof which are filed in accordance with law. Said classifications and tariffs, copies of which are available for inspection by the parties hereto, are hereby incorporated into and made part of this contract."

Further, each air bill contained the following:

"DECLARED VALUE Agreed and understood to be not more than the value stated in the governing tariffs for each pound on which charges are assessed

unless a higher value is declared and applicable charges paid thereon."

No higher value was declared on the air bills.

Philco claims that at the time of shipments, Flying Tiger had on file with the Civil Aeronautics Board, and in effect, certain tariff provisions for "shipments subject to advance arrangements" including "shipments requiring special attention, protection or care en route". This tariff provision provided that certain kinds of shipments easily damaged or of high value would be acceptable for air carriage only upon advance arrangements. Philco claims that the advance arrangements in the present case were that only "swing-tailed" aircraft would be used so the memory cores could be transported upright.

At the time of shipment, the relevant tariff rules filed by Flying Tiger with the CAB were:

"Rule No. 3.1:

"(g) No agent, servant or representative of carrier has authority to alter, modify or waive any provisions of the contract of carriage or of this tariff.

"Rule No. 3.3:

"(a) In consideration of carrier's rate for the transportation of any shipment, which rate, in part, is dependent upon the value of the shipment as determined pursuant to rule 4.3, the shipper and all other parties having an interest in the shipment agree that the value of the shipment shall be determined in accordance with the provisions of rule 4.3 and that the total liability of the carrier shall in no event exceed the value of the shipment as so determined."

"(b) By tendering the shipment to carrier for transportation, the shipper, for himself and all other parties having an interest in the shipment, waives all claims for damages beyond the limitations set

forth in these rules and regulations and affirms the description of the shipment as recited on the air bill, and the fact that the shipment is not of a nature unsuitable for carriage by air or hazardous thereto.

"Rule No. 4.2:

"(a) 1. A shipment shall be deemed to have a declared value of 50 cents per pound (but not less than $50) unless a higher value is declared on the air bill at the time of the receipt of the shipment from the shipper."

The first memory core, transported on September 7, 1963, arrived at its destination in a severely damaged condition. The memory core had been removed from a "swing-tailed" aircraft in Chicago and transported aboard a 707 aircraft to its destination. Substantial damages resulted to the interior parts and systems of the memory core. As a result of the damages Philco spent $14,112.25 to repair the memory unit.

On June 30, 1963, Philco had contracted with the other plaintiffs herein to insure Philco against casualty losses, including property in transit. Under the contract, these insurers became obligated to pay to Philco all damages to the memory cores in excess of $5,000 and are Philco's subrogees, though plaintiffs herein will be referred to as Philco.

After the September 7, 1963, shipment, Philco informed Flying Tiger of the damages. Flying Tiger, it is claimed, assured Philco that in the future the memory units would be loaded and transported in an upright position and that only "swing-tailed" aircraft would be used.

On March 28, 1964, Flying Tiger accepted another memory core unit for air transportation. The air freight bill contained the same clause as the September 7, 1963, bill. The same tariff provisions were in effect. The memory unit was delivered to

Philco in seriously damaged condition on a Constellation aircraft which was not equipped with "swing-tailed" facilities. Again, the memory core had arrived in a horizontal position. As a result, Philco incurred transportation and repair expenses in the sum of $35,113.70. By virtue of the insurance contract, all of Philco's damages in excess of $5,000 were paid and again, subrogation to Philco's rights occurred.

On May 6, 1966, Philco and its subrogees filed a complaint in the Wayne county circuit court against Flying Tiger. In its complaint, Philco set forth four separate counts. The first two counts arise out of the shipment of September 7, 1963, and counts three and four arise out of the shipment of March 28, 1964. Count one of the complaint sought relief against Flying Tiger for negligence and gross negligence as a result of the improper method of transportation which was employed and in count two of the complaint they asked that the air freight bill issued on September 7, 1963, be rescinded and that they be awarded restitution. Count three of the complaint requested a judgment against Flying Tiger as a result of the negligence and gross negligence in transporting the unit shipped March 28, 1964, in a horizontal manner; count four of the complaint asked that the air freight bill for the shipment of March 28, 1964, be rescinded and that plaintiffs be awarded restitution.

Flying Tiger, on February 24, 1967, filed a motion for summary judgment based upon the provisions of the Federal Aviation Act (49 USCA, § 1373), the tariff provisions it had on file with the CAB, the declared value clauses in the two air freight bills and the principle of Federal uniformity.

The circuit court granted a partial summary judgment. Damages were limited to the provisions

found within the Federal Aviation Act of 1958 and it was held that this act was controlling on the issue of limitation of damages, the limit of which would be $1,001.50.

On December 5, 1967, Philco appealed to this Court, but claim of appeal was dismissed for the reason that the judgment rendered in the trial court was not appealable as of right.

On April 24, 1968, the circuit court entered an order vacating the previous judgment and ordered a partial summary judgment in Flying Tiger's favor with prejudice. The order expressly directed the judgment be final as to the issues of gross negligence and rescission. Appeal followed.

The basic issue discussed in the briefs is:

Whether the common-law remedies of gross negligence and rescission were reserved to Philco by virtue of 49 USCA, § 1506, of the Federal Aviation Act. This issue consists of two subissues:

A. Whether defendant's failure to use the agreed-upon method of conveyance constituted a material deviation which entitled plaintiff to be relieved of the provisions of the declared value clause contained in the bills of lading and in the air tariffs filed with the CAB.

B. Whether air tariffs filed by an air freight carrier pursuant to 49 USCA, § 1373, will survive when there are claimed losses against an air carrier due to grossly negligent conduct and claims of rescission for breach of contract based on the same conduct.

A summation of the situation before us is particularly well stated in plaintiffs' brief as follows:

"Has the Congress of the United States adopted a uniform national policy as to air freight transportation which preempts local or state law to the

extent that a shipper may not maintain an action against an air carrier in a state court to rescind an air bill of lading for failure of consideration or substantial breach of the carrier's undertaking, or an action in a state court based on gross negligence? Appellant believes that this is the basic question presented by this appeal. The trial court has determined, based upon congressional legislation, appellee's tariff, and the provisions of the bill of lading, that the two shipments described in the complaint were so enveloped by the Federal law and by a national policy of uniformity, that a state court applying state law may not inject itself into the relationship between the shipper and carrier through a suit for rescission of the air bill and further that a state court, applying state law, may not award damages for gross negligence. The trial court concluded that remedies afforded by state or local law must give way to a uniform national policy of preemption.

"Appellants in this proceeding seek to rescind the air bills of lading and to obtain relief for the full loss they have sustained. Appellants assert that the declared value clause, as well as any tariff provision incorporated into the air bills of lading, must necessarily fall if the contracts are rescinded. Appellants contend that Congress has not preempted this remedy but to the contrary that Congress has, in fact, reserved it to appellants.

"In the alternative, appellants seek to recover in this proceeding on grounds of gross negligence. Appellants plead that appellee's actions, in view of the express understanding with regard to the type of aircraft to be employed, and in view of the fact that the memory cores were highly susceptible to damage, was wilful, wanton and reckless. Appellants contend that the provisions of the tariff and the provisions of the air freight bills were not intended to limit recovery in cases where the carrier's actions were so gross, so wilful, so wanton as to constitute reckless, grossly negligent conduct.

"Appellants submit that the theory of appellee's motion for summary judgment, and the theory adopted by the trial court in its opinion, is that appellants are, in any event, and irrespective of the relief sought, restricted to damages in the amount of 50 cents per pound. Inasmuch as the weight of the shipments is not disputed, appellants' damages for the shipment of September 7, 1963, would be limited to $496.50, and appellants' damages for the shipment of March 28, 1964, would be limited to $505. Appellants respectfully urge that they have pleaded causes of action for rescission and causes of action for gross negligence for which appellants' recovery is not so limited, and that appellants should be entitled to show the jury all of their actual expenses and losses.

"Particularly, with respect to rescission, appellants ask that the very clause which the circuit court invoked be set aside along with the other provisions of the contract. The holding below, that the counts for rescission be dismissed, gives the declared value clause the effect of preempting any right to rescind which appellants may have had. Similarly, with respect to gross negligence, appellants' position below was that appellee's actions and omissions amounting to gross negligence were outside of the restrictive provisions of the declared value clause, outside of the reasonable contemplation of the parties, and that the damages flowing from such conduct were neither intended to be, nor were they, subjected to the 50 cent restriction."

Flying Tiger replies with a likewise well-stated summary of its position:

"If a loss arises to freight being shipped by an air carrier and a plaintiff is able to show the air carrier was responsible for the damage or loss, the amount of the air carrier's liability is still limited. The tariff presently on file and at issue has been accepted as using a declared value formula for lim-

itations of recovery. The carrier is liable only for a fixed amount based on the freight weight unless the shipper declares a higher value and pays additional freight charges. Hence, the tariff system gives the shipper the advantage of allowing him to choose between buying insurance for his cargo, in effect, from the airline, or taking out his own insurance and paying a lower transportation rate, *New York and Honduras Rosario Mining Company* v. *Riddle Airline, Inc.* (1958), 4 NY2d 755 (149 NE 2d 93, 172 NYS2d 168).

"A carrier subject to the Federal Aviation Act (hereinafter referred as FAA) is required to publish and file tariffs containing its rates and rules. These, then, taken together, constitute the terms of its offer to serve the public. The FAA expressly prohibits the carrier from deviating from those terms. To be sure, the Act does not explicitly say that the other party to the contract—the shipper—is similarly restricted. But the restriction upon his freedom to contract follows as a matter of course. If the carrier is legally free to agree only to terms published in its tariff and no others, there can hardly be a 'meeting of the minds' on other contractual terms, even though the passenger or shipper retains complete freedom. The tariff, then, contains the only terms upon which the parties can legally agree. It contains the carrier's offer, which the shipper accepts when he uses the carrier's service. It is the contract of carriage. The tariff limitations are applicable by force of law, *Lichten* v. *Eastern Airlines* [(1951), 189 F2d 939], and an acceptance of the air bill is an acceptance of the conditions imposed.

"The tariff becomes a part of the contract of shipment, but the question here arises as to whether the shipper, or representatives, having become a party to the contract, may avoid its provisions on the ground that they are unlawful. May he, for example, after receiving transportation, attack the tariff rate as unreasonable and recover as damages

the excess over the lawful rate? May he escape the effect of a tariff rule limiting the carrier's liability on the ground that it is invalid? In the case of ordinary contracts, of course, a party can obtain relief from provisions which are illegal or otherwise contrary to public policy. Is this principle applicable to a contract of carriage embodied in a tariff filed pursuant to the FAA?

"Essentially, the question is whether particular remedies are available to enforce a statutory duty of the carrier. The FAA imposes an affirmative duty on carriers to publish lawful tariff rates and rules, that is, rates and rules which are 'just and reasonable' and which do not result in 'any undue or unreasonable preference or advantage' or in 'any unjust discrimination or any undue or unreasonable prejudice or disadvantage'. To insure performance of this duty, the FAA provides an elaborate system of safeguards and remedies. The CAB may, through the exercise of its suspension powers, prevent an unlawful rate or rule from taking effect. Even after the unlawful provision has become effective, the Board may take corrective action and require the carrier to submit a lawful provision. Our problem is to determine whether or not, in addition to these remedies, the Act permits a shipper to attack the validity of a tariff provision in order to establish a common-law action against the air carrier or deprive the air carrier of a defense based on the terms of the tariff."

Philco argues that the *failure to use the method of conveyance agreed upon was a material deviation which destroyed all consideration under the contract.* Substantial breach of a contract is an adequate basis for the rescission of a contract and *Rosenthal v. Triangle Development Co.* (1933), 261 Mich 462, is cited for that proposition.

The transportation as tendered by Flying Tiger was useless and highly detrimental, Philco says.

Failure of consideration as a basis for rescinding a contract is discussed in *Sharrar* v. *Wayne Savings Ass'n* (1929), 246 Mich 225, also cited.

Under the common law, a deviation in the mode or manner of conveyance operated to displace a contract of carriage. The shipper was entitled at his option to treat the contract as abrogated. 13 Am Jur 2d, Carriers, §§ 328–334; 33 ALR2d 145, Deviation by carrier in transportation of property, § 35, pp 217–219.

The effect of a material deviation to a contract was to do away with the express contract altogether. *McKahan* v. *American Express Company* (1911), 209 Mass 270 (95 NE 785). Further, *Reynolds* v. *Adams Express Company* (1916), 172 NC 487 (90 SE 510), held that a deviation from the agreed method of transportation rendered the carrier liable to the full extent of the loss irrespective of a declared value.

Philco also argues that since the airline's conduct was grossly negligent they should be allowed full recovery *notwithstanding the declared value clause.* They admit that they could find no cases which have thusly held.

Congress in the Federal Aviation Act has not preempted plaintiffs' common-law right. The FAA has a saving clause (49 USCA, § 1506). The common-law right is abrogated under the act where its continued existence would be absolutely inconsistent with the provisions of the Act. *Texas and Pacific Railway Company* v. *Abilene Cotton Oil Company* (1907) 204 US 426 (27 S Ct 350, 51 L Ed 553). *T.I.M.E. Incorporated* v. *United States* (1959), 359 US 464 (79 S Ct 904, 3 L Ed 2d 952).

Philco relies strongly on *Hewitt-Robins, Incorporated* v. *Eastern Freight-Ways, Inc.* (1962), 371 US 84 (83 S Ct 157, 9 L Ed 2d 142). The Court there

held that the common-law duty to ship over the cheapest possible route survived under the Motor Carrier Act.[1] Survival of the remedy depends upon whether the exercise of the particular remedy would be inconsistent with the statutory scheme. Plaintiffs argue that it is not inconsistent with the FAA statutory scheme to assert the common-law right of rescission. They argue that *Mitchell* v. *Union Pacific R. Co.* (SD Cal, 1960), 188 F Supp 869, is a case which sustains the survival of a rescission remedy. That case held that fraud vitiated the value declaration and the tariff provisions which limited liability. Rescission for fraud and rescission based on substantial breach or failure of consideration, they claim, should be handled in the same way.

Flying Tiger argues that a provision of an air tariff filed pursuant to the Federal Aviation Act becomes a part of the contract of air freight transport, and cannot be avoided or invalidated by a court. They say that an air carrier is liable only for a fixed amount based on the freight's weight, unless the shipper declares a higher value and pays additional charges. *New York and Honduras Rosario Mining Company* v. *Riddle Airlines, Inc.,* *supra.*

The purpose for the above rules is to assure uniformity of rates and services to all persons. *Lichten* v *Eastern Airlines* (CA2, 1951), 189 F2d 939 (25 ALR2d 1337), held that a misdelivery of luggage is not a conversion which would deprive a carrier of the benefit of a tariff provision limiting liability. Therefore, they argue, in actions attacking the validity of tariffs and in actions based on contracts involving interstate air carriage, federal common law and state law is held to be irrelevant. A tariff is presumed to be valid until the CAB declares it to

---

[1] 49 USCA, § 301 *et seq.*

be otherwise, and federal law applies to determine its validity. Plaintiffs would be bound in a breach of contract action to a recovery based on the tariff provisions. This should not be allowed through rescission to do indirectly what they could not do directly. *VanDyke* v. *Pennsylvania R. Co.* (1952), 46 Del 529 (86 A2d 346). The tariffs which fix the amount of recovery are premised upon the amounts to be charged for transportation.

A claim of gross negligence against an air carrier does not render inapplicable air freight tariffs or waive the limitation of liability. *Mitchell* v. *Union Pacific R. Co., supra. Tishman & Lipp, Inc.* v. *Delta Airlines* (SD NY 1967) 275 F Supp 471.

Philco, in its reply, attempts to distinguish those cases relied upon by the defendant. Plaintiff claims that *Hewitt-Robins Incorporated* v. *Eastern Freight-Ways, Inc., supra,* is controlling on the present case.

In *New York and Honduras Rosario Mining Company* v. *Riddle Airlines, Inc., supra,* the court allowed payments of actual damages rather than the tariff. The court did not discuss the effect of Civil Aeronautics Act[2] upon the common law.

Plaintiffs are not raising the issue of the validity of the tariff as was raised in *Randolph* v. *American Airlines, Inc.* (1956), 103 Ohio App 172 (144 NE2d 878), and *Tishman & Lipp, Inc.,* v *Delta Airlines, supra.* As to negligence, plaintiff claims that *Tishman, supra,* was only a case of ordinary negligence. Further, in *Tishman* the common-law arguments were disposed of on their merits rather than discarded as was done in the present case, as a matter of law.

None of the cases cited by defendant involve a material breach of a contract which resulted in an

---

[2] 49 USCA, § 1301 *et seq.,* later amended by the Federal Aviation Act, 49 USCA, § 1301 *et seq.*

entire failure of consideration. *Lichten, supra,* involved ordinary negligence.

The statute in issue (49 USCA, § 1506) states:

"§ 1506. Remedies not exclusive

"Nothing contained in this chapter shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies."

The Supreme Court of Tennessee has held the purpose of this act and specifically this section:

"* * * is to take control of the air space, to set up federal agencies to regulate the operation of aircraft and to provide standards to promote the efficiency and safety of operation and it does not exclude state law not inconsistent with its purpose." Syllabus, *Southeastern Aviation, Inc.,* v. *Hurd* (1962), 209 Tenn 639 (355 SW2d 436) *appeal dismissed* 371 US 21 (83 S Ct 120, 9 L Ed 2d 96).

The test which governs whether a common-law remedy survives is that if the remedy is inconsistent with the statutory scheme of regulation, it does not survive. *Hewitt-Robins Incorporated* v. *Eastern Freight-Ways, Inc., supra.* The issue before that court was the same as the present one, and as stated there is:

"The sole issue before us is whether the complaint states a cause of action upon which the district court may grant relief."

In that case, as in the present one, no attack was made upon the validity of the published tariff rates and it is conceded that they were reasonable. Thus, all of the cases cited by Flying Tiger to prove that its tariff rates could not be attacked as being unreasonable in the courts have no bearing upon the

present case.   *T.I.M.E. Incorporated* v. *United States, supra.*

The entire controversy hinges upon whether the carrier materially deviated from the terms of the contract to render the contract void. The trial court determined that this issue was foreclosed by the "savings clause" of the act, 49 USCA, § 1506, as being inconsistent with the statutory scheme of regulation. The court found plaintiffs' claim to be inconsistent with 49 USCA, § 1373, which says:

"§ 1373. Tariffs of air carriers—Filing, posting, and publication; rejection of tariffs

"(a) Every air carrier and every foreign air carrier shall file with the Board, and print, and keep open to public inspection, tariffs showing all rates, fares, and charges for air transportation between points served by it, and between points served by it and points served by any other air carrier or foreign air carrier when through service and through rates shall have been established, and showing to the extent required by regulations of the Board, all classifications, rules, regulations, practices, and services in connection with such air transportation. Tariffs shall be filed, posted, and published in such form and manner, and shall contain such information, as the Board shall by regulation prescribe; and the Board is empowered to reject any tariff so filed which is not consistent with this section and such regulations. Any tariff so rejected shall be void. The rates, fares, and charges shown in any tariff shall be stated in terms of lawful money of the United States, but such tariffs may also state rates, fares, and charges in terms of currencies other than lawful money of the United States, and may, in the case of foreign air transportation, contain such information as may be required under the laws of any country in or to which an air carrier or foreign air carrier is authorized to operate."

Flying Tiger filed the following tariff:

"A shipment shall be deemed to have a declared value of 50 cents per pound (but not less than $50) unless a higher value is declared on the air bill at the time of the receipt of the shipment from the shipper."

In *Lichten* v. *Eastern Airlines, supra,* the plaintiff argued that an over-carriage of her luggage was a deviation. This deviation was a fundamental breach of her contract and it therefore deprived the carrier of the benefit of the exculpatory provisions of the tariff. The court said that this argument:

"Overlooks, however, the far-reaching effect of the principle of uniformity of treatment, which requires that the tariff be applied to all matters arising from the attempted performance of the contract."

The above conclusion is discussed in *Mitchell* v. *Union Pacific R. Co., supra.* The court concluded:

"The real question here is whether or not the legislative policy of maintaining uniform rates and of preventing rebates is so strong that it would allow the carrier to limit its liability even though it was the fraud of one of its agents which induced the contract of carriage. It is not believed that such a result is required, and the court holds that the fraud vitiated the value declaration and the tariff provisions which would limit the liability."

The conclusion can be applied to the present case where a material breach of a contract is alleged.

In the present case, there was performance of the contract but there was an alleged material deviation. The case most closely on point is *The Sarnia* (1921), 278 F 459 (cert den 258 US 625 [42 S Ct 382, 66 L Ed 797]). In that case, goods were carried

above deck instead of below deck as provided for in the bill of lading. The court held that the amount paid by the shipper to the carrier took into consideration the risk to which the goods were to be exposed and the manner of carriage. The court said:

"It seems to us most unreasonable to hold that, as between the shipper and the carrier, the former should be estopped by a valuation clause, where the latter's own misconduct has breached the agreement and destroyed the conditions upon which the estimate of value was predicated. In fixing the value the shipper was undoubtedly influenced by the fact. that the goods were to be carried below deck, and not exposed to the perils of carriage above deck."

Further, in *Reynolds* v. *Adams Express Company, supra,* the court held that the tariff rates filed with the Interstate Commerce Commission were established with reference to express shipments and were not intended to apply where the carrier resorted to another mode of shipment.

Where the deviation is so material under a contract as to completely change the risk and terms of the contract, the shipper should not be bound by the contract, that is, the contract should be rescinded.

"The distinction suggested between contractual. and statutory limitation or exemption clauses is more apparent than real. The fundamental character of the bill of lading is not changed by incorporation of the statutory provisions of the Act.[3] The bill of lading is the contract between the shipper and the carrier. It defines the rights, duties, exemptions, and limitations of the parties, whether imposed by statute or the result of voluntary agreement. And when there is such a departure from the contract of carriage as to amount to an unjustifiable deviation, the bill of lading and all its terms go. So,

---

[3] Carriage of goods by sea act, 46 USCA, § 1300 *et seq.*

too, the statutory limitation would be vitiated unless the act specifically keeps it alive." *Jones* v. *The Flying Clipper* (SD NY, 1953), 116 F Supp 386, 388.

It does not appear that the FAA specifically keeps the tariff in question "alive".

To paraphrase from the *Jones Case*—To uphold the carrier's contention that the limitation of liability is absolute, regardless of a fundamental breach which goes to the very essence of its undertaking, would permit any carrier to violate with recklessness the terms of the bill of lading, knowing it cannot be called upon to pay more than 50 cents per pound.

It is for the circuit court to determine whether the deviation alleged by plaintiffs was material and not justifiable. If it is thusly found, then the contract should be rescinded. The summary judgment is reversed for a determination of this issue.

It is conceded by the plaintiffs that there is no case law on the gross negligence issue. In *Mitchell* v. *Union Pacific R. Co., supra,* the court refused to distinguish between wilful misconduct and ordinary negligence. Further, in *Tishman & Lipp, Inc.,* v. *Delta Airlines, supra,* the court held that even gross negligence would not render the tariff inapplicable.

As to this issue, the summary judgment of the circuit court is affirmed.

No costs, neither party having prevailed in full.

All concurred.