Anun SEETAPUN and Marcia Numoff
Seetapun, husband and wife,
Appellants,

v.

ILLINOIS–CALIFORNIA EXPRESS, INC.,
a corporation, Appellee.

No. 46036.

Supreme Court of Oklahoma.

Dec. 26, 1973.

Rehearing Denied Feb. 12, 1974.

Fagin, Hewett, Mathews & Fagin by Warner E. Lovell, Jr., and Charles L. Fagin, Oklahoma City, for appellants.

Foliart, Mills & Niemeyer, Oklahoma City, for appellee.

BARNES, Justice:

Here, Appellants, a husband and wife, hereinafter referred to as "plaintiffs", have petitioned for certiorari to review an interlocutory order entered by the trial court in an action they instituted there to recover $49,125.80 against Appellee, a transportation company, and others, as defendants, for destruction of their household furnishings while being transported for them from Los Angeles to Chicago in one of said defendant's moving vans which allegedly exploded and burned. The $49,125.80 claimed actual value of the furnishings allegedly included many objects of art.

Plaintiffs' second amendment to their petition disclosed that the bill of lading defendant issued to plaintiffs' agent, Del Mar Shipping Corporation of Los Angeles, California, on said shipment contained a provision fixing the agreed "released value" of said shipment at 10¢ per pound. Defendant sought to foil plaintiffs' efforts in their petition amendment to plead around this contractual limitation on the amount of their recovery by filing a pleading in whose paragraphs "I", "III", and "V" it asked the court to strike paragraphs 6, 7, 8, and 12 of said Second Amendment to Petition.

The pertinent substance of the allegations of plaintiff's petition's second amendment, which defendant, by its combination motion and demurrer, sought to have stricken, was: That the explosion and burning of the defendant's van and its contents occurred because defendant's employees loaded onto the van, with plaintiffs' furnishings, "a highly volatile substance"; "that the shipment of such highly volatile and inflammable substance with plaintiffs' . . . household goods and art objects was contrary to and in direct violation of the rules and practices of the moving and trucking industry"; and that any limited liability of defendant or agreed released valuation would thus be of no effect, and "plaintiffs should recover the true and actual loss and damage suffered by destruction of their household goods and possessions."

By the trial court's order, herein challenged, defendant's Second Amended Motions and Demurrer were sustained to the extent of striking all of plaintiffs' allegations such as indicated above. The parties tacitly agree that the trial court thereby prevented plaintiffs' attempted avoidance of the bill of lading's agreed released valuation provision, and, in effect, limited their recovery to a sum arrived at by multiplying the weight of their shipment by 10¢ per pound.

In determining whether, as plaintiffs contend, the trial court erred in said ruling, we must first recognize that here, as in Chandler v. Aero Mayflower Transit Company [U.S.C.A., 4th Cir.], 374 F.2d 129; Lehigh Valley R. Co. v. John Lysaght, Limited [C.C.A., 2d Cir.], 271 F. 906, and other cases involving interstate shipments, the Carmack Amendment to the Interstate Commerce Act, as amended, 49 U.S.C.A., § 20(11), applies. The pertinent portion of said Act, as thus amended, reads:

"Any common carrier, railroad, or transportation company subject to the provisions of this chapter receiving property for transportation from a point in one State . . . to a point in another State . . . shall issue a receipt or bill of lading therefor, and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it or by any common carrier, railroad, or transportation company

to which such property may be delivered or over whose line or lines such property may pass within the United States . . . when transported on a through bill of lading, and no contract, receipt, rule, regulation, or other limitation of any character whatsoever shall exempt such common carrier, railroad, or transportation company from the liability imposed; and any such common carrier, railroad, or transportation company so receiving property for transportation from a point in one State . . . to a point in another State . . . or any common carrier, railroad, or transportation company delivering said property so received and transported shall be liable to the lawful holder of said receipt or bill of lading or to any party entitled to recover thereon, . . . for the full actual loss, damage, or injury to such property caused by it or by any such common carrier, railroad, or transportation company to which such property may be delivered or over whose line or lines such property may pass within the United States . . . when transported on a through bill of lading, notwithstanding any limitation of liability or limitation of the amount of recovery or representation or agreement as to value in any such receipt or bill of lading, or in any contract, rule, regulation, or in any tariff filed with the Interstate Commerce Commission; and any such limitation, without respect to the manner or form in which it is sought to be made is declared to be unlawful and void: * * * Provided, however, That the provisions hereof respecting liability for full actual loss, damage, or injury, notwithstanding any limitation of liability or recovery or representation or agreement or release as to value, and declaring any such limitation to be unlawful and void, shall not apply, * * * to property, except ordinary livestock, received for transportation concerning which the carrier shall have or shall be expressly authorized or required by order of the Interstate Commerce Commission to establish and maintain rates dependent upon the value declared in writing by the shipper or agreed upon in writing *as the released value of the property,* in which case such declaration or agreement shall have no other effect than to limit liability and recovery to an amount not exceeding the value so declared or released, * * * Provided further, That *nothing in this section shall deprive any holder of such receipt or bill of lading of any remedy or right of action which he has under the existing law: * * *.*" [Emphasis added.]

It is plaintiffs' theory that defendant's alleged loading and carriage of the "highly volatile and inflammable substance" in the same moving van with their household furnishings constituted a "deviation" from the contract evidenced by the bill of lading, and thus rendered defendant liable for the full value of the destroyed furnishings, irrespective of the "released value" provision of said bill, under cases such as Philco Corporation v. Flying Tiger Line, Inc., 18 Mich.App. 206, 171 N.W.2d 16.

The principle that where the bailee of goods, such as a common carrier, deviates from the conditions of his contract, whereby the bailor's goods are lost, it is liable for the goods' value, irrespective of any limitation of liability in the contract, was adopted by this Court in the early case of O. K. Transfer & Storage Co. v. Neill, 59 Okl. 291, 159 P. 272, LRA 1917A 58. And this is the general rule. See other cases cited and discussed in the annotation at 33 ALR 2d 139. In the Neill case, the deviation involved was a deviation from the route which the jury, by its verdict, found had been specified by the shipper; but other authorities show that the same principles may apply to agreements for loading and packing. See the annotations at 7 ALR 3d 725, 44 ALR 2d 993, and 81 ALR 811.

In the present case, we think the complaint described in plaintiffs' second amendment to their petition is similar in nature, and analogous, to the appellant's complaint about the manner in which the

memory cores were transported by the appellee in the Philco Corporation case, supra, and the alleged deviation from the required manner of stowage involved in Jones v. The Flying Clipper [U.S.D.C., S. D., N.Y.], 116 F.Supp. 386, referred to therein. Therefore, though one of those cases involved the Federal Aviation Act of 1958, 49 U.S.C.A. § 1373, and the other involved the Carriage of Goods by Sea Act, 46 U.S.C.A. § 1300 et seq., instead of the Interstate Commerce Act involved here, we think the same principles applied in those cases should be applied here. Under those cases, a material or fundamental and unjustified deviation from the shipping agreement as to the mode or manner in which the shipped goods or articles are packed, stowed or transported, if same causes the shipment injury, renders ineffective the shipping agreement's liability ceiling, or limitation.

Defendant contends, however, that the principles above referred to apply only in cases where the shipper's and carrier's contract *expressly* prescribes a certain manner or mode of packing, stowing, and/or transportation, which was not the situation here. We note, however, that in Jones, supra, it was conceded that the necessary deviation could be "contrary to the [parties'] contract or [to] custom . . ."; and in 13 C.J.S. Carriers 116, it is said:

" . . . if the carrier deviates from the course or method of shipment stipulated for in the contract, *or the one customarily used* and which the shipper has the right to assume will be used, it will deprive itself of the benefit of any exemption from liability found in the contract." [Emphasis added.]

See also Ward v. Gulf, M. & N. R. Co., 23 Tenn.App. 533, 539, 134 S.W.2d 917, 921, 922, in which it was said:

" . . . plaintiff relies upon the common law rule . . . that if a carrier commits a breach of the contract, it is not entitled after such breach to invoke provisions of the contract which are in its favor. And in this connection it is well established that a carrier unjustifiably *deviating from the customary* route or *mode or manner of transportation* thereby creates such a breach of contract. * * * [citing numerous authorities]" [Emphasis added.]

In view of the above, it is our opinion that if a certain mode or manner of carriage or transportation is customary, then it may be found to be an implied, but integral, part of the parties' contract. Here, as already noted, plaintiffs' petition's second amendment alleged that defendant's shipment of the "highly volatile and inflammable substance" with—or in the same moving van with—plaintiffs' household furnishings "was contrary to and in direct violation of the rules and practices of the moving and trucking industry." If, at the trial, they present competent evidence in support of this allegation, then we think that in this case, as the Court concluded in the Philco case, supra: Whether the defendant's alleged manner of transporting those articles was a "material and not justifiable deviation" from the shipping contract could be an issue for determination in the trial court. If plaintiffs are held to proof of such custom, then there is no foundation for defendant's inference that our refusal to adhere to its "special covenant" argument will allow shippers to bind carriers by *any mode* of transportation they have assumed will be used.

In accord with the foregoing, plaintiffs' petition for certiorari is hereby granted and the trial court's order is hereby reversed insofar as it sustains defendant's "Second Amended Motions"; and this cause is remanded to said court with directions to proceed in a manner not inconsistent with the views expressed herein.

All Justices concur.