**John CASSIDY, Jr., d/b/a Contractors' Exchange, Appellant,**

v.

**AIRBORNE FREIGHT CORPORATION, a Foreign Corporation, Appellee.**

**No. 49777.**

Supreme Court of Oklahoma.

May 24, 1977.

Rehearing Denied June 27, 1977.

Richard James, Stroud, for appellant.

Donald R. Wilson, Fenton, Fenton, Smith, Reneau & Moon, Oklahoma City, for appellee.

DOOLIN, Justice.

We are asked to decide if loss or damage to freight delivered to an air carrier, who agrees to transfer goods by air, is limited to a recovery of the amount set out in the applicable tariffs when there has been a material delay of long duration [1] in delivery, due to the action of carrier or connecting carriers?

The facts are not disputed. Shipper (appellant-Cassidy) contracted with the carrier (Airborne Freight Corp.) to pick up, at Stroud, Oklahoma, a piece of oil field equipment called an hydraulic cylinder, weighing 175 pounds. Shipper made no expressed declaration of actual or declared value of the cylinder and paid no increased or higher charges based on a declaration of value. Carrier agreed to deliver the cylinder by air freight to the purchaser at McAllen, Texas, and issued a through bill of lading thereon.

Shipper, Cassidy, brought suit claiming full value of the cylinder ($960.00) plus interest and attorney fees; he alleged two to

---

1. Shipper alleges that the cylinder was not delivered for 45 odd days. Carrier does not con-firm a date of delivery alleging that shipment was refused.

three days was a reasonable time in which to deliver the cylinder, the carrier failed to proceed with reasonable dispatch and the merchandise was refused by the buyer in Texas because of its late arrival, all to the damage of the shipper.

Carrier answered, denying liability except for $87.50 (175 lbs. × $.50) which was alleged to have been tendered to the shipper and was tendered into court at the time of carrier's answer. Tariff which had been approved by the Civil Aeronautics Board provided:

"§ 15(E) *VALUATION CHARGE*:

(1) * * * unless a higher value is declared on the air waybill at the time of issuance, shipment will have a declared value of $.50 a pound or $50.00 whichever is higher.

§ 70 *LIABILITY OF THE FORWARD-ER*:

(A)(1) In consideration of the transportation charges assessed, which charges are dependent upon the declared value as determined pursuant to Rule No. 15(E) the Forwarder's liability (if any) shall in no event exceed such declared value, or the actual value of the shipment at the time and place it is accepted for transportation if such actual value is less than the declared value."

Copy of the tariffs was attached to carrier's answer.

Shipper, upon receipt of carrier's answer, filed amendments to his petition to include an allegation that in addition to the original complaints, the defendant had deviated from the implied terms of the contract as to the route and mode of transportation and delivery was not within the expectation of the shipper, and was in violation of the exact or implied terms of the contract.

Carrier promptly denied shipper's allegations as to deviation and after a series of motions and interrogatories, both parties moved for summary judgment. The interrogatories determined the goods were shipped promptly from Oklahoma City by American Airlines to Dallas where they were transferred by American to Texas International on the day following arrival in Dallas. Carrier admits that ordinarily two to three days is a reasonable time for transportation of air freight, such as the cylinder in question, from a point of origin in Oklahoma to a destination point in Texas.

The trial court granted summary judgment for the defendant carrier, and shipper properly initiated appeal to this court after his motion for a new trial was denied.

Shipper's motion for a new trial and petition in error charge the judgment of the trial court was contrary to law and there were material issues of fact remaining for trial. We agree.

Carrier argues that its liability is restricted to the limits set out in the air freight tariff and refers us to such cases as *S. Toepfer, Inc. v. Braniff Airways*, 135 F.Supp. 671 (W.D.Okl.1955); *Furrow & Co. v. American Airlines*, 102 F.Supp. 808 (W.D. Okl.1952); *Hefner v. Owens*, 280 P.2d 1025 (Okl.1955); *Southeastern Express Co. v. Pastime Amusement Co.*, 299 U.S. 28, 57 S.Ct. 73, 81 L.Ed. 20 (1936); *Tishman and Lipp Inc. v. Delta Airlines*, 275 F.Supp. 471 (S.D.N.Y.1967) and *Mitchell v. Union Pacific R.R. Co.*, 188 F.Supp. 869 (S.D.Cal.1960). We note in all of these cases the plaintiffs rely or bring their suits on a theory of tort. They expressly alleged carelessness, negligence or gross negligence of some kind or description. The airline cases deal with the Federal Aviation Act or its predecessor, the Supreme Court case with the Interstate Commerce Act and the Oklahoma case and the railroad case with the last mentioned act. But this distinction is not material, for in both acts there is a so-called savings clause.[2]

2. 49 U.S.C.A. § 20(11)—(the so-called Carmack Legislation.)

"Provided further, That nothing in this section shall deprive any holder of such receipt or bill of lading of any remedy or right of action which he has under the existing law."

49 U.S.C.A. § 1506 (Federal Aviation Act).

"Nothing contained in this chapter shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies."

It is true the United States Court for the 8th Circuit expresses a contrary view supporting the carrier, but with all deference and respect we must disagree with this great court.[3] And, until such time as the Supreme Court of the United States has ruled to the contrary or preempted such field, we prefer the rationale and rule adopted in *Seetapun v. Ill.-Calif. Express, Inc.*, 518 P.2d 885 (Okl.1973); *O. K. Transfer and Storage Co. v. Neill*, 59 Okl. 291, 159 P. 272, L.R.A. 1917A 58 (1916) and *Philco Corp. v. Flying Tiger Line, Inc.*, 18 Mich. App. 206, 171 N.W.2d 16 (1969).

The theory advanced by the shipper and espoused by the decisions appearing immediately forward is that a material deviation or an unreasonable or substantial deviation renders the contract of freightment a nullity and the deviation is so substantial and unreasonable that the contract has been rescinded in all particulars. We hold such a deviation is a question of fact requiring determination by the trier of fact, court or jury. In the *Philco* case, the Court of Appeals of Michigan had this pertinent comment concerning the attempted limitation of liability to tariff specifications 171 N.W.2d at page 24:

" * * * * *—To uphold the carrier's contention that the limitation of liability is absolute, regardless of a fundamental breach which goes to the very essence of its undertaking, would permit any carrier to violate with recklessness the terms of the bill of lading, knowing it cannot be called upon to pay more than 50 cents per pound."

In *Seetapun* we stated:

1. "The Interstate Commerce Act, as amended, 49 U.S.C.A., § 20(11), does not deprive any holder of a bill of lading of his common law contract rights.

2. At common law, if a carrier commits a breach of contract of affreightment which goes to the essence of the contract, it is not entitled after such breach to invoke provisions of the contract which are in its favor.

3. A carrier unjustifiably deviating from the customary mode or manner of transportation thereby creates a breach of contract which goes to the essence of the contract."

Carrier argues the adoption of the Uniform Commercial Code (U.C.C.) 12A O.S. 1971 § 7–103, 7–309[4] dictates a holding in its favor and *Hefner v. Owens, supra*, which was decided prior to the adoption of the code shows the law in Oklahoma has always limited a shipper's recovery to the amounts set out in the tariff. We do not agree. We

---

3. *Rocky Ford Moving Vans, Inc. v. United States*, 501 F.2d 1369, 1372, 8 Cir.:

(4, 5) Appellant has attempted to circumvent the result dictated by the Carmack Amendment by invoking the "material deviation" doctrine applicable in admiralty cases. See, e. g., The Sarnia, 278 F. 459 (2nd Cir. 1921), cert. denied, 258 U.S. 625, 42 S.Ct. 382, 66 L.Ed. 797 (1922). Under that doctrine, a contractual limitation of liability will not restrict the shipper's recovery where the carrier has breached a material or essential provision of the underlying agreement, for such a deviation arguably represents a complete failure of consideration and compels rescission of the entire carriage contract. The Government's position is that storage in an approved warehouse was a *quid pro quo* or a fundamental part of its bargain with Rocky Ford, inserted in the contract in exchange for the limited value declaration. While the Amendment (Carmack) itself is silent with respect to "material deviations," we agree with Judge Eisele that that admiralty law doctrine has no application in the context of regulated interstate commerce, which is governed by the overriding federal policy of uniformity. *Lichten v. Eastern Airlines, Inc.*, 189 F.2d 939 (2d Cir. 1951); *Minneapolis Society of Fine Arts v. Railway Express Agency, Inc.*, 213 F.Supp. 129 (D.Minn. 1963).

4. § 7–103. To the extent that any treaty or statute of the United States, regulatory statute of this State or tariff, classification or regulation filed or issued pursuant thereto is applicable, the provisions of this Article are subject thereto.

§ 7–309. (2) Damages may be limited by a provision that the carrier's liability shall not exceed a value stated in the document if the carrier's rates are dependent upon value and the consignor by the carrier's tariff is afforded an opportunity to declare a higher value or a value as lawfully provided in the tariff, or where no tariff is filed he is otherwise advised of such opportunity * * *.

have carefully searched the code and have found nothing prohibiting a shipper's right to maintain an action for rescission of the contract, or anything in the code that would limit the recovery in such a rescission action. There is little doubt if the suit is brought for the negligent breach of the terms of a freightment contract, then the tariffs, being a part of the contract, limit the amount of shipper's recovery under the U.C.C., *Hefner* and shipper's authority heretofore cited. It does not follow if recovery is sought by rescission or voiding the contract, that a part of the contract is less valid or more valid. Shipper would have us say the tariffs remain valid in a rescinded or void contract. Under the common law, the effect of material deviation from the provisions of the contract was to abrogate it and to do away with contract altogether.[5]

It is claimed by the carrier that *Seetapun* is limited, if applicable at all, to deviations or acts committed by the originating carrier (defendant in this case) and since the originating carrier Airborne Freight is innocent of any wrongdoing, it cannot be held responsible. This argument overlooks the effect of the Carmack Amendment, 49 U.S. C.A. § 20(11) and 12A O.S.1971 § 7–302 (comment 1).[6]

We would not limit the effect and rationale of *Seetapun* as does the carrier.

It is for the trial court to determine whether there has been a rescission of the freightment contract by a material, significant or substantial deviation brought about by the carrier.

REVERSED AND REMANDED.

All the Justices concur.

**5.** *Philco Corp. v. The Flying Tiger Line, Inc.,* supra; *Ware v. City of Tulsa,* 312 P.2d 946 (Okl.1957); *Berland's Inc. of Tulsa v. Northside Village Shopping Center, Inc.,* 447 P.2d 768 (Okl.1968).

**6.** 12A O.S.1971 § 7–302. The issuer of a through bill of lading or other document embodying an undertaking to be performed in part

by persons acting as its agents or by connecting carriers is liable to anyone entitled to recover on the document for any breach by such other persons or by a connecting carrier of its obligation under the document * * *.

*Airways Inc. v. El Paso Coin Co. Inc.,* 517 S.W.2d 915 (Tex.Civ.App.1974).