[No. 6261–1. Division One. December 4, 1978.]

ALFRED J. BIANCHI, *Respondent,* v. UNITED AIR LINES, *Appellant.*

*Detels, Draper & Marinkovich* and *Ronald A. Bergman,* for appellant.

*Bianchi, Tobin & Rinaldi, P.S.,* and *Gordon R. Tobin,* for respondent.

SWANSON, J.—United Air Lines appeals the denial of its motion for summary judgment limiting its liability to plaintiff Bianchi in a suit for consequential damages resulting from United's failure to deliver timely a sealed envelope shipped by Bianchi. United contends tariff liability limitations of the Warsaw Convention control. We agree and remand for summary judgment in favor of Bianchi in the amount of $9.07.

On Friday, August 27, 1976, Alfred J. Bianchi desired a promissory note be delivered from Seattle to Mazatlan, Mexico, by the next day. A United Airlines employee represented via telephone that United flights would arrive in

Los Angeles that evening in time to connect with a Mexicana Airline flight scheduled to reach Mazatlan the 28th. Gordon Tobin, a member of the law firm of Bianchi, Tobin and Rinaldi, delivered the note in a sealed envelope to a United desk at Seattle–Tacoma International Airport where he stressed the need for prompt delivery. Ray Mann, a United employee, assured Tobin the deadline would be met. Mann then inquired as to the document's value, which Tobin did not know. Tobin instructed the document be registered as worth $1.

The envelope did not arrive in Mazatlan until the late afternoon of the 31st, having remained in United's possession until noon of that day. Bianchi claims the delay caused him damages on the sale of a home to the extent of $10,000 due to a devaluation of the peso.

█ As an air carrier, United Air Lines is required by statute to file with the Civil Aeronautics Board

> tariffs showing all rates, fares, and charges for air transportation between points served by it . . . and showing to the extent required by regulations of the Board, all classifications, rules, regulations, practices, and services in connection with such air transportation.

49 U.S.C. § 1373(a)(1976). Subject to approval of the Civil Aeronautics Board, tariffs may limit an air carrier's liability for loss.

> The courts have consistently held that limitations of liability for loss from any cause are valid and that where air carriers file tariffs with the Civil Aeronautics Board, pursuant to the provisions of the Civil Aeronautics Act, such tariff provisions containing limitations of liability for loss or damage to baggage are fully effective and become a part of the contract of transportation.

*Barr v. United Airlines, Inc.,* 10 Av. L. Rep. 18429, 18430 (1969), *aff'd,* 316 N.Y.S.2d 980 (1970). *See also Tishman & Lipp, Inc. v. Delta Air Lines,* 275 F. Supp. 471 (S.D.N.Y. 1967), *aff'd,* 413 F.2d 1401 (2d Cir. 1969); *Vogelsang v. Delta Air Lines, Inc.,* 302 F.2d 709 (2d Cir. 1962), *cert. denied,* 371 U.S. 826, 9 L. Ed. 2d 65, 83 S. Ct. 46 (1962); *Lichten v. Eastern Airlines, Inc.,* 189 F.2d 939 (2d Cir.

1951). A tariff constitutes not only the contract of transportation but also the law governing disputes between the contracting parties. *Fairchild Hiller Corp. v. Commuter Airlines, Inc.,* 66 Misc. 2d 708, 321 N.Y.S.2d 621 (1971); *United States v. Associated Air Transport, Inc.,* 275 F.2d 827 (5th Cir. 1960).

As regards the international transportation of goods,[1] a multilateral treaty controls, entitled "Convention for Unification of Certain Rules Relating to International Transportation by Air," and concluded in 1929 at Warsaw, Poland. The United States adheres to the "Warsaw Convention" pursuant to Presidential Proclamation. 49 U.S.C. § 1502 (1976).

The Warsaw Convention provides specific limitations for an air carrier's potential liability for loss of goods, Chapter II, Section III, Article 22(2):

> In the transportation of checked baggage and of goods, the liability of the carrier shall be limited to a sum of 250 francs per kilogram, unless the consignor has made, at the time when the package was handed over to the carrier, a special declaration of the value at delivery and has paid a supplementary sum if the case so requires.

49 U.S.C. § 1502 (1976). Thus, in the instant situation, United's limitation of liability inures both in the tariff filed and approved by the Federal Aviation Act, and in a treaty upon which tariffs for international transportation are based.

United moved for summary judgment in favor of Bianchi in the amount of $9.07—the dollar equivalent of 250 francs

---

[1]The instant fact pattern lies within the definition of international transportation of goods. Chapter I, Article 1(3) of the Warsaw Convention provides:

> Transportation to be performed by several successive air carriers shall be deemed, for the purposes of this convention, to be one undivided transportation, if it has been regarded by the parties as a single operation, whether it has been agreed upon under the form of a single contract or of a series of contracts, and it shall not lose its international character merely because one contract or series of contracts is to be performed entirely within a territory subject to the sovereignty, suzerainty, mandate, or authority of the same High Contracting Party.

49 U.S.C. § 1502 (1976).

per kilogram for a 1–pound parcel—arguing the contract of carriage so limited any liability on its part. The trial court denied the motion, holding

> that though tariffs generally apply in shipper–carrier relationships, this case falls within an exception because of assurances made by defendant to plaintiff so as to vitiate the tariff and to make it not proper and not applicable under the facts of this case.

Neither the trial court in its decision nor Bianchi on appeal contest the general applicability of tariffs in limiting liability; rather, each relies upon a common–law theory of material deviation operating to rescind a contract. By such reasoning the failure of United to deliver goods in accordance with the express assurances of its employees constitutes such a substantial deviation from the bargained–for consideration underlying the contract as to entitle the shipper to treat the contract as abrogated. Cited in support of the material deviation theory are *Cassidy v. Airborne Freight Corp.,* 565 P.2d 360 (Okla. 1977); *Seetapun v. Illinois–California Express, Inc.,* 518 P.2d 885 (Okla 1973); *Philco Corp. v. Flying Tiger Line, Inc.,* 18 Mich. App. 206, 171 N.W.2d 16 (1969).

We find the trial court erred in inferring a common–law theory could control in a situation within the aegis of the Warsaw Convention. The material deviation cases cited above did not involve international air transport or the Warsaw Convention; thus, they fail to support application of that theory in the instant fact pattern. To the contrary, case law makes clear that the Warsaw Convention, being a sovereign treaty, is the supreme law of the land and as such preempts local law when applicable. *Noel v. Linea Aeropostal Venezolana,* 247 F.2d 677 (2d Cir. 1957), *cert. denied,* 355 U.S. 907, 2 L. Ed. 2d 262, 78 S. Ct. 334 (1957); *Burnett v. Trans World Airlines, Inc.,* 368 F. Supp. 1152 (D.N.M. 1973); *Husserl v. Swiss Air Transport Co.,* 351 F. Supp. 702 (S.D.N.Y. 1972).

Bianchi contends the trial court should be upheld, however, on an alternative theory of inadequate notice of any

limitation of liability due to the printing utilized on United's air waybill. The Warsaw Convention requires that particular documentation be delivered a passenger, a transporter of baggage, or a shipper if a carrier wishes to avail itself of that Treaty's limitations of liability. The crucial language in each situation is "[a] statement that the transportation is subject to the rules relating to liability established by this convention."[2]

Bianchi argues the size of the print stating contractual limitations of liability herein approximates that rejected as insufficient to give proper notice in *Lisi v. Alitalia–Linee Aeree Italiane,* 370 F.2d 508 (2d Cir. 1966), *aff'd,* 390 U.S. 455, 20 L. Ed. 2d 27, 88 S. Ct. 1193 (1968). The court in *Lisi,* reviewing consolidated actions for wrongful death, held that warning language so small as to be unreadable failed to meet the requirements of the Warsaw Convention. Quoting from the opinion of the trial judge, the *Lisi* court averred, "[T]he exculpatory statements on which defendant relies are virtually invisible." *Lisi* at 514. We are urged to find the *Lisi* rationale equally applicable to situations involving international transportation of air freight.

---

[2] 49 U.S.C. § 1502 (1976). As regards air freight, the convention specifies, Chapter II, Section III:

*"Article* 5(1)

"Every carrier of goods has the right to require the consignor to make out and hand over to him a document called an 'air waybill': every consignor has the right to require the carrier to accept this document.

"(2) The absence, irregularity, or loss of this document shall not affect the existence or the validity of the contract of transportation which shall, subject to the provisions of article 9, be none the less governed by the rules of this convention.

*"Article 9*

"If the carrier accepts goods without an air waybill having been made out, or if the air waybill does not contain all the particulars set out in article 8(*a*) to (*i*), inclusive, and (*q*), the carrier shall not be entitled to avail himself of the provisions of this convention which exclude or limit his liability.

*"Article 8*

"The air waybill shall contain the following particulars:

" . . .

"(*q*) A statement that the transportation is subject to the rules relating to liability established by this convention."

Bianchi does not cite, nor have we found, any instance of another court so holding.

We do note a number of cases, however, wherein courts chose not to apply the *Lisi* rule. *See, e.g., Martin v. Trans World Airlines, Inc.*, 219 Pa. Super. Ct. 42, 280 A.2d 647 (1971) (involving domestic transportation of baggage); *Sechler v. Trans World Airlines, Inc.*, 12 Av. L. Rep. 18185 (Cal. App. 1973), *cert. denied*, 414 U.S. 1113, 38 L. Ed. 2d 740, 94 S. Ct. 843 (1973) (involving domestic transportation of air freight); *Robert v. Pan American World Airways, Inc.*, 71 Misc. 2d 991, 993, 337 N.Y.S.2d 891, 893 (1972) (involving domestic transportation of baggage, wherein the court stated, "The fact that this tariff rule was printed in virtually invisible type on the plane ticket is immaterial, since the filing with the board of the tariff containing that rule constituted constructive notice, whether or not the passenger knew of the existence of the rule."); *Parker v. Pan American World Airways, Inc.*, 447 S.W.2d 731 (Tex. Civ. App. 1969); *Compare Stolk v. Campagnie Nationale Air France*, 58 Misc. 2d 1008, 299 N.Y.S.2d 58 (1969) (wherein *Lisi* was discussed but not dispositive). We also appreciate a dissent in *Lisi* wherein the majority rule is termed "judicial treaty–making." *Lisi* at 515 (Moore, J., dissenting).

█ We do not find it necessary to comment on the persuasiveness of the *Lisi* policy considerations, made in the context of wrongful death actions, in the present fact pattern involving air freight carriage. Rather, we find as a matter of law that the front page of United's air waybill gives ample notice of the limitations of liability provided by the Warsaw Convention. The language of that document reads, in bold face, easily legible type placed directly above the space wherein Mr. Tobin affixed his signature:

> If the carriage involves an ultimate destination or stop in a country other than the country of departure, the Warsaw Convention may be applicable and the Convention governs and in most cases limits the liability of carriers in respect of loss of or damage to cargo.

Other arguments of Bianchi based upon certain semantic distinctions and general tort liability theory are without adequate foundation.

Reversed and remanded for entry of summary judgment in favor of Bianchi in the amount of $9.07.

WILLIAMS and DORE, JJ., concur.