**LUFTHANSA GERMAN AIRLINES, Plaintiff**

**v.**

**AMERICAN AIRLINES, INC., and GMD AIR CARGO EXPRESS a/k/a GMD AIR, and CARLOS C. GUZMAN d/b/a GMD AIR CARGO EXPRESS, Defendants**

Civil No. 1988/235

District Court of the Virgin Islands

Div. of St. Croix

May 26, 1992

JOHN K. DEMA, ESQ., Christiansted, St. Croix, V.I., *for plaintiff*

WILFREDO A. GEIGEL, ESQ., St. Croix, V.I., *for GMD*

LAD MINGUS, ESQ., Christiansted, St. Croix, V.I., *for American Airlines*

CAHN, *Judge Sitting by Designation*

## MEMORANDUM AND ORDER

This matter is before the court on the Motion of Plaintiff Lufthansa German Airlines ("Lufthansa") for partial summary judgment. Lufthansa requests that this court find that the Warsaw Convention[1] ("Convention") does not apply to limit the liability of American Airlines, Inc. ("American Airlines") because of a fundamental breach in the execution of the contract of carriage of goods. Defendant American Airlines has filed a Cross-Motion for summary judgment on the grounds that Lufthansa lacks standing to

---

[1] The Warsaw Convention is the short title for the Convention For Unification of Certain Rules Relating to International Transportation By Air, which governs "all international transportation of persons, baggage, or goods performed by aircraft for hire." Art. 1. In 1934, the United States adopted the multinational treaty, and its terms are reprinted at 49 U.S.C. § 1502.

There is a presumption of liability for damage resulting from loss or destruction of property under Article 18 of the Convention. However, if liable under Article 18, the carrier's liability is limited in amount by Article 22. This limitation is the subject to Article 25 which deprives the carrier of the right to the liability limit if the loss was caused by its willful misconduct.

bring this suit, and that this suit is barred by the doctrine of champerty.[2] Defendant GMD Air Cargo ("GMD") has also moved for summary judgment, arguing that there is no privity of contract between Lufthansa (in either of its capacities) and GMD.

For the following reasons, the Motions will be denied.

## I. FACTUAL BACKGROUND

The material facts are undisputed. Malca-Amit Far East Ltd., ("Malca-Amit") entered into a contract with Lufthansa to transport gold jewelry, with precious and semi-precious stones, from Hong Kong to St. Thomas, U.S.V.I. via New York's John F. Kennedy Airport ("JFK"). Lufthansa (with the consent of the shipper Malca-Amit) subcontracted with American Airlines[3] to transport the goods as high value cargo from JFK to St. Thomas. The cargo was delivered to American Airlines after the direct flight specified on Lufthansa's air waybill with American Airlines from JFK to St.

---

[2] Champerty is defined in Black's Law Dictionary as:

> A bargain by a stranger with a party to a suit, by which such third party undertakes to carry on the litigation at his own cost and risk, in consideration of receiving, if successful, a part of the proceeds or subject sought to recover.

Black's Law Dictionary (5th ed. 1979) 209.

American Airlines contends that because Lufthansa is not the consignor or the "shipper," the action, as maintained by Lufthansa, is champertous. Lufthansa admits that Malca Amit Far East Ltd., is the "shipper on the contract of carriage with Lufthansa and American." See Plaintiff's Response to Opposition and Plaintiff's Opposition to Cross-Motion (hereinafter "Plaintiff's Response Brief") at 9. Lufthansa avers, however, that it was assigned the rights of Delvag Luftfarhrtversicherungs-AG, Koln ("Delvag"), a wholly-owned subsidiary of Lufthansa, which had insured the Malca Amit shipment. Lufthansa further avers that "Delvag paid Eighty-three Thousand One Hundred Twenty-nine and No/100 Dollars ($83,129.00) in satisfaction of the claim of Malca Amit." Plaintiff's Response Brief at 9. Lufthansa avers that "[a]s was its usual practice, upon payment of the Malca Amit claim, Delvag ceded any rights to Lufthansa that it had acquired by paying the claim." The affidavit of Delvag's director and in-house counsel, attached as Plaintiff's Exhibit N, supports this averment. Finally, Lufthansa contends that the assignment by Delvag to Lufthansa is valid and enforceable under German law and the law of this jurisdiction. Lufthansa argues that it is a real party in interest since there is a valid assignment of rights.

[3] Lufthansa's Air waybill #220-4838-5153, which is the contract with Malca Amit, names American Airlines as a successive carrier.

Thomas had departed.[4] American Airlines placed the goods on an American Airlines flight to San Juan, Puerto Rico and, without the knowledge or consent of Lufthansa, subcontracted with GMD for transportation of the goods from San Juan, Puerto Rico to St. Thomas.[5] In addition, the air waybill evidencing the contract for carriage between American Airlines and GMD did not indicate on its face the international origin of the goods nor did it state that the goods were designated as high value cargo. Lufthansa contends that this rerouting constituted a fundamental breach of its contract of carriage with American Airlines. Lufthansa further contends that since the transportation of the goods by GMD was never contemplated by the parties, the international nature of the transportation was destroyed (at JFK or San Juan) when the contract with GMD was entered into. Lufthansa argues that the shipment of the goods to San Juan which was not an "agreed stopping place" and the subsequent contract of carriage between American Airlines and GMD constitute a fundamental breach of the contract of carriage and serve to remove the entire carriage from the ambit of the Convention.[6]

## II. DISCUSSION

### A. The Law

Article 1 of the Warsaw Convention defines the scope of the international treaty and provides in relevant part:

---

[4] On July 22, 1986, at 10:16 p.m., the cargo was delivered to American Airlines. Lufthansa's airway bill # 220-4838-5153 indicated that the cargo was to be transferred to American Airlines flight # 625 to St. Thomas. American Airlines claims that flight # 625 departed JFK at 10:40 a.m., approximately 12 hours before the cargo was delivered.

[5] American Airlines placed the cargo on board a flight to San Juan, Puerto Rico for transfer to a non-American Airlines substitute carrier (in this case GMD) to St. Thomas. In its brief American Airlines contends that a transfer to a non-American Airlines cargo carrier was necessary "because American did not fly cargo direct from San Juan to St. Thomas on its own planes, due to weight restrictions." See Defendant, American Airlines, Inc.'s Reply to Plaintiff's Motion For Partial Summary Judgement And Defendant's Cross Motion For Summary Judgment (hereinafter "American's Reply Brief") at 4.

[6] Lufthansa expressly reserved the right to pursue a claim for unlimited liability due to willful misconduct as provided for in Article 25(1) of the Warsaw Convention.

(1) This convention shall apply to all international transportation of persons, baggage, or goods performed by aircraft for hire.

*       *       *

(2) For the purpose of this convention the expression "international transportation" shall mean any transportation in which *according to the contract made by the parties, the place of departure and the place of destination, whether or not there be a break in the transportation or transshipment, are situated either within the territories of two High Contracting Parties, or within the territory of a single High Contracting Party*

*       *       *

(3) Transportation to be performed by several successive air carriers shall be deemed, for the purposes of this convention, to be one undivided transportation, if it has been regarded by the parties as a single operation, whether it has been agreed upon under the form of single contract or of a series of contracts, *and it shall not lose its international character merely because one contract or a series of contracts is to be performed entirely within a territory subject to the sovereignty, suzerainty, mandate, or authority of the same High Contracting Party.*

Lufthansa does not dispute that ordinarily the provisions of the Convention would govern the parties' rights in this matter, since it is readily determinable from the face of the waybill, that the loss occurred during international carriage. There is also no dispute that Malca Amit, Lufthansa, and American Airlines regarded the contract of carriage, though involving one named successive carrier (American Airlines), as an "undivided transportation" or "single operation" pursuant to Article 1(3) of the Convention. Lufthansa, however, urges that there was a material breach in the execution of the contract of carriage which vitiates the contract and therefore takes this dispute beyond the ambit of the Convention. At oral argument, both parties conceded that they were unable to cite any case precisely on point. The court, likewise, is unaware of any reported domestic decision with a similar factual predicate, and therefore will examine the cases advanced by the parties to determine whether they are controlling. Lufthansa, urges reliance on Information Control Corp. v. United Airlines, 14 Avi. Cas. (CCH)

220

18,128 (Cal. Ct. App. 1977), a Federal Aviation Act case, as support for its argument.

Information Control is a domestic carrier lost cargo case involving the re-routing of the carriage of goods when the customer had requested and reserved specific routing. The Federal Aviation Act of 1958, which governed the action, contains a limitation of liability clause comparable to that found in the Warsaw Convention pursuant to which the carrier attempted to limit its liability. The California Court of Appeals affirmed the lower court's holding that "the route deviation was a material breach of the agreement for shipment . . . ; that [the carrier's] failure to ship the computer on the [specified] flight was willful, entitling Info to rescind the agreement and recover its damages." Information Control at 18,130.

Lufthansa's argument requires that the court determine whether the case at bar presents circumstances which operate deprive the contract of carriage at issue of its international character, thereby removing it from the ambit of the Warsaw Convention. In Information Control, the California Court of Appeals stated that "[t]he savings clause of the Federal Aviation Act recognizes the availability of state remedies not inconsistent with the purpose of the act."[7] The Information Control court also found the trial court's observation that a "carrier's contention that '[the [Federal Aviation Act] limitation of liability is absolute, regardless of a fundamental breach which goes to the very essence of the its undertaking, would permit any carrier to violate with recklessness the terms of the bill of lading, knowing that it cannot be called upon to pay more than 50 cents per pound,'" dispositive. See Information Control at 18,132. This was the policy consideration behind the California Court of Appeals' affirmance of the lower court's application of the common law theory of fundamental breach to rescind the contract of carriage in Information Control.

---

[7] Information Control Corp., at 18,132 (citing Philco Corporation v. Flying Tiger Line, Inc., 11 Avi. 17,278, 171 N.W.2d 16 (Mich. Ct. App. 1969). Section 1506 of the Aviation Act provides:

§ 1506. Remedies not exclusive

"Nothing contained in this chapter shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies."

Id., n.8 citing 49 U.S.C.A. § 1506.

This court finds that it would be error (i.e., contrary to the overall purpose of the Warsaw Convention to provide uniform worldwide liability rules and definite limits to carrier's obligation) to apply the analysis of Information Control to the instant action which involves the international carriage of goods and an international treaty. First, this court notes that there is no comparable saving clause contained in the Convention which justifies the conclusion that the common law theory of fundamental breach or material deviation may control this matter. Moreover, the California courts' policy concern that carriers will recklessly violate contracts of carriage if their liability under the Act is deemed to be absolutely limited is not a factor in this case. Under the Convention, the liability limit is not absolute, but is subject to Article 25(1) which deprives the carrier of the right to limit its liability:

> if the damage is caused by his wilful misconduct or by default on his part as, in accordance with the law of the court to which the case is submitted, is considered to be equivalent to wilful misconduct.

Whether the rerouting of the goods by American Airlines from New York to San Juan was an unreasonable or substantial deviation, and whether the subsequent transfer of the goods to GMD for carriage demonstrates reckless disregard of the possibility of injury to the plaintiff are triable issues of fact which the plaintiff has reserved.

■■ Since it cannot be contested that this case falls within the Convention's definition of international transportation of goods, it is this court's view that the analysis of Information Control and its policy concerns do not control this matter. Further, a sovereign treaty, such as the Warsaw Convention, is the supreme law of the land, and thus preempts local law and policy when it applies. See generally Trans World Airlines Inc. v. Franklin Mint Corp., 466 U.S. 243 (1984); see also Bianchi v. United States, 587 P.2d 632, 634 (Wash. App. 1978) ("case law makes clear that the Warsaw Convention, being a sovereign treaty, is the supreme law of the land and such preempts local law when applicable."). Thus, even assuming that there "is a deviation so great 'as to completely change the risk and terms of the contract, [so that] the shipper should not be bound by the contract,'" Information Control at 18,132, in the absence of precedent, the court is not prepared to rule on a motion for partial summary judgment that, as a matter of law, such a breach deprives

222

the contract of carriage of its international character so as to remove it from the ambit of the convention.

The court's position is consistent with the decision of one foreign court which considered the identical legal question. Rotterdamsche Bank and Another v. B.O.A.C. and Aden Airways, Ltd., 1 Lloyd's Rep. 154 (Q.B. 1953) involved a consignment for the carriage of gold coins by air between Amsterdam and Djibouti.[8] The gold coins never reached Djibouti and the loss was factually linked to a deviation from the contractual voyage due to the negligence of an unnamed successive carrier—Aden Airways.[9] The plaintiffs there contended that the deviation was a "fundamental departure from the contractual voyage [which] entitled the plaintiffs to repudiate the contract of carriage which thus became deprived of its international character and so no longer subject to the terms of the convention." Justice Pilcher in Rotterdamsche admitted to a momentary attraction to the argument, but ultimately rejected the argument stating:

> Even assuming that the doctrine of deviation, as known in maritime law, applies to air carriage, and assuming that the over-carriage or mis-carriage, which here occurred, amounted

---

[8] The air consignment note provided that the goods (gold coins) were to be carried to Djibouti in the following manner: by K.L.M. on Service K.L. 629 from Amsterdam to Cairo on Mar. 25, 1950 and by the first named defendant (British Overseas Airways Corporation (B.O.A.C.)), on Service B.O. 471 from Asmara to Djibouti on March 29, 1950, and again by [B.O.A.C.] on Service B.O. 477 from Asmara to Djibouti.

Rotterdamsche, 1 Lloyd's Rep. at 155.

[9] The court is fully aware of the factual distinctions that may be made vis-a-vis the positions of Aden Airways and GMD in the respective cases. In Rotterdamsche, the English court found that reading the consignment note in conjunction with B.O.A.C.'s Service time-table "it must have been clear to all interested parties that, while freight from Cairo to Asmara was to be paid to British Overseas Airways Corporation, this portion of the service was being undertaken by British Airways Corporation's subsidiary Aden Airways Dakota Services." Rotterdamsche, 1 Lloyd's Rep. at 159. The same cannot be said with respect to GMD. No time-tables were involved in this case. In addition, American Airlines provides direct scheduled services from the agreed stopping place (New York) to the place of destination on the waybill (St. Thomas). However, while these factual distinctions may be relevant in determining willful misconduct, they are not dispositive of the question before the court, that is, whether circumstances that may constitute fundamental breach deprive a contract of carriage of its international character so as to take an action out of the scope of the Convention.

to an unjustifiable deviation from the contractual voyage, I can find nothing in the carriage by Air Act, 1932, or the Convention [Warsaw Convention], which justifies the conclusion that what occurred in this case served to remove the carriage from the ambit of the Convention or to disentitle the second defendants from relying on the provisions of art. 28(1) of the Convention.

Admittedly, Rotterdamsche may be limited to its facts, but it is clear that under the particular facts of this case, its interpretation is correct. It will therefore be adopted in this case. Moreover, in doing so the court will further the fundamental policy of uniformity in the interpretation of the Warsaw Convention. See Exim Industries, Inc. v. Pan American World Airlines, 754 F.2d 106, 108 (2d Cir. 1985) (citing Reed v. Wiser, 555 F.2d 1079, 1083 (2d Cir.), cert. denied, 434 U.S. 922 (1977)).

## B. Lufthansa's Standing

American Airlines has moved for summary judgment, alleging that Lufthansa lacks standing to bring the suit, and that this suit is barred by the doctrine of champerty. American Airlines argues that the right of action under the Convention is generally limited to the consignor or consignee and that, pursuant to Fed. R. Civ. P. 17(a), Lufthansa is not a real party in interest. *See* American's Reply Brief at 24. The court rejects the defendant's arguments.

Having decided that this action is governed by the terms and conditions of the Warsaw Convention, the court must now determine whether, under the Convention, Lufthansa is precluded from maintaining this action. The convention limits the right to bring suit to the consignor, under Article 12, or the consignee, under Article 13. However, when the plaintiff is not the consignor or consignee named on the waybill, these provisions are read in conjunction with Articles 14 and 15 of the Warsaw Convention which govern standing. Article 14 provides that:

> [t]he consignor and consignee can respectively enforce all the rights given them by article 12 and 13, each in his own name, whether he is acting in his own name, or in the interest of another provided that he carries out the obligations imposed by the contract.

Article 15 provides that:

> (1) Articles 12, 13 and 14 shall not affect either the relations of the consignor and the consignee with each other or the rela-

224

tions of third parties whose rights are derived either from the consignor or from the consignee.

Here, Malca Amit, the shipper on the contract of carriage, was insured by Delvag Luftfahrtversicherungs-AG, Koln, a wholly owned subsidiary of Lufthansa. Plaintiff submits that Delvag paid Malca-Amit Eighty-three Thousand One Hundred and Twenty-nine and No/100 Dollars ($83,129.00) for the lost jewelry. See Statement In Lieu of An Oath of Dr. Wolf Muller-Rostin, Director and In-House Counsel for Delvag Luftfahrtversicherungs-AG, Koln, exhibit N [hereinafter "Statement of Dr. Muller-Rostin"].

Lufthansa submits that it has standing to maintain this action because Delvag "ceded to Lufthansa its rights and obligations arising out of Delvag's payment of $83,129.00 in U.S. dollars to (Malca Amit) a Delvag Insured for a shipment of valuable cargo lost on or about July 18, 1986." Statement of Dr. Muller-Rostin. Plaintiff further avers that the ceding of rights is specifically allowed under Paragraph 398 of Burgerliches Gesetzbuth ("BGB"), the Civil Code of the Federal Republic of Germany, and that the agreement constitutes a valid assignment under the law of this jurisdiction as embodied in Restatement (Second) of Contracts, § 317, et seq. (1981), which is made applicable by § 4, 1 Virgin Islands Code. Moreover, at oral argument Lufthansa informed the court that Delvag has ratified the lawsuit and consents to be named as plaintiff.

■■ While American Airlines is correct that Articles 12 and 13 of the Convention generally limit the right to sue to the consignor or consignee, these provisions, when read in conjunction with Articles 14 and 15, have been construed broadly to permit parties other than the named consignee or consignor to maintain an action under the Convention. See generally Highlands Insurance Company v. Trinidad and Tobago (BWIA International) Airway Corporation, 739 F.2d 536 (11th Cir. 1986) (Action brought by subrogee of cargo shipper); see also B.R.I. Coverage Corp. v. Air Canada, 725 F. Supp. 133 (E.D.N.Y. 1989) (an undisclosed principal's successor-in-interest has standing to sue under the Convention because the plaintiff's rights are derived from undisclosed principal who had standing) (citing Leon Bernstein Commercial Corp. v. Pan Am. World Airways, 72 A.D.2d 707, 708, 421 N.Y.S.2d 587, 589 (1st Dep't 1979)). These cases are authority for the proposition that if it can be established that the plaintiff's right is "derived either from the consignor or from the consignee," and the "defendant will not be mak-

225

ing any liability payment to the wrong party nor will the plaintiff be unjustly enriched by any award or damages," then the Convention must not be narrowly construed if to do so would defeat the rights of the plaintiff. Plaintiff's proffer establishes that it has been subrogated to the rights of the consignor Malca-Amit by virtue of the payment to Malca-Amit by the insurer Delvag. It is clear that under Article 15 of the Convention that the plaintiff's rights are "derived . . . from the consignor." Therefore, this court finds that Lufthansa has standing as a subrogee to maintain this action.

■ American Airlines also contends that plaintiff has failed to establish that it is the real party in interest as is required under Fed. R. Civ. P. 17(a), and the plaintiff's maintenance of the suit is therefore champertous. Defendant American Airlines raised its real party in interest objection for the first time in its response to plaintiff Lufthansa's motion for partial summary judgment. In its reply brief and at oral argument, Lufthansa represented that Delvag "ratified the instant lawsuit and consents to be named as Plaintiff." See Plaintiff's Response and Opposition at 11. The court is disinclined to engage in a lengthy discussion, of why, in its view, Lufthansa is a real party in interest under the law of this jurisdiction as embodied by the Restatement (Second) of Contracts. Therefore, pursuant to Fed. R. Civ. P. 17(a), which provides that

> [n]o action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed *after objection* for ratification of commencement of action . . . by the real party in interest; and such ratification shall have the same effect as if the action had been commenced in the name of the real party in interest.

the court accepts Delvag's ratification of the instant action and will allow Lufthansa to amend the caption of its complaint to name Delvag as a plaintiff.

## C. *GMD's Motion for Summary Judgment*

■ Defendant GMD has moved for summary judgment on the ground there is no contract of carriage between GMD and Lufthansa. See Defendant GMD's Opposition to Plaintiff's Motion for Partial Summary Judgment, Request for Summary Judgment and Memorandum of Law in Support Thereof (hereinafter "GMD's Opposition") at 3–5. GMD argues that it should be dismissed from the action because first, it owes no contractual duty to the plaintiff;

and second, because American Airlines, to whom it may or may not be liable, has not cross-claimed against GMD. GMD's argument, premised on the common law doctrine of privity of contract, is unavailing. On the facts of this case, even at common law, lack of privity of contract would not relieve GMD of liability. GMD does not dispute its misfeasance, that is, that it accepted the goods for transportation and that those goods were lost during its performance of the carriage. In addition, Lufthansa can show, by evidence wholly extrinsic to the written contract between American and GMD, that American made the contract for Lufthansa's benefit, and that GMD was aware that American owed the performance to the owner of the goods. In this regard, the liability of GMD to the owner of the cargo may be analogized to the common law liability of a bailee who takes possession of the goods, directly or through an agent (here American Airlines), and thus undertakes certain duties owed to the owner as shipper of the goods, whether or not a consensual contract exists between them. Accordingly, there is little doubt that at common law Lufthansa, as subrogee, could maintain a suit against GMD for the negligent breach of the contract of carriage to which it was a third party beneficiary.[10] Thus, at common law, GMD is not entitled to be dismissed from this action.

However, common law does not control the parties' rights in this case, and the court cannot ignore the fact that the goods at issue were lost during a leg of a contract of carriage to which all the provisions of the Warsaw Convention apply. As explained earlier, the international nature of a shipment is determined from the face of the waybill governing the shipment. According to Lufthansa's air-waybill # 220-4838-5153, the service of carriage was for the shipment of jewelry from Hong Kong to St. Thomas, United States Virgin Islands. In furtherance of the contractual voyage, American Airlines shipped the cargo to San Juan, Puerto Rico where American Airlines claims, because of weight restrictions, it was necessary to transfer the cargo to a freight forwarder, GMD, for carriage of the goods to its final destination. On these facts, it cannot be said

---

[10] A person is a creditor beneficiary if the promisee's (in this case American Airlines) intent is that the third party is to receive the performance of the contract in satisfaction and discharge of some actual or supposed duty or liability of promisee to the beneficiary. See generally 4 Corbin on Contracts § 779c at 40–41 (1951); 2 Williston on Contracts § 356 at 824–27 (3d ed. 1959); Restatement of Contracts § 133 at 151–52 (1932).

that the transference of the goods to GMD terminated the contractual voyage and deprived the transportation of its international character. Therefore, it is necessary to consider GMD's Motion for summary judgment under the Warsaw Convention.

At oral argument, counsel for Lufthansa contended that privity of contract is not required, since the necessary contractual link may be established under Article 30 of the Warsaw Convention, which provides in relevant part:

> (1) In the case of transportation to be performed by various successive carriers and falling within the definition set out in the third paragraph of article 1, each carrier who accepts passengers, baggage or goods shall be subject to the rules set out in this convention, and shall be deemed to be one of the contracting parties to the contract of transportation *insofar as the contract deals with that part of the transportation which is under his supervision.*

Unarguably, the final clause of Article 30 extends to GMD's participation in the performance of the carriage for transportation undertaken by American Airlines. This is sufficient to make GMD a party either as an agent or servant acting within the scope of its employment. This conclusion follows from the fact of GMD's participation in the performance of the carriage for transportation by air, as a substitute carrier, for that part of the contractual voyage which was under the "supervision" of American Airlines. There is no doubt that American Airlines is a successive carrier within the meaning of the Convention. However, GMD does not accept that when it undertook the carriage it became a successive carrier within the meaning of Article 1(3) of the Convention, and raises some doubt as to whether it may be deemed a contracting party in its individual right under Article 30.

Article 1(3) of the Convention states in part (emphasis added):

> Transportation to be performed by several successive air carriers shall be deemed, for the purposes of this convention, to be one undivided transportation *if it has been regarded by the parties as a single operation,* whether it has been agreed upon under the form of a single contract or a series of contracts, and it shall not lose it international character merely because one contract . . . is to be performed entirely within a territory of the same High Contracting Party.

The court's review of reported cases interpreting this provision shows that the clause "if it has been regarded by the parties as a single operation" has been consistently construed to mean that all parties—both shipper or passenger and carrier (domestic or transcontinental)—must regard the domestic and transcontinental flights as a single operation.[11] In every case, the parties' awareness of the international character of the entire service of transportation, that is, that the domestic leg of a voyage is integrally related to the international leg, is always fact determinative.[12] Thus the particular facts of the instant case must be examined.

There is no dispute that when American Airlines undertook the obligation to transport the cargo to its final destination it did so in respect to the unitary transit from Hong Kong to St. Thomas. However, GMD argues that on the face of its contract of carriage, as evidenced by its air-waybill # 0014-1540, it cannot be said that it had notice of either the international origin of the cargo or of the fact that the cargo transferred was designated high value by the consignor. The crux of GMD'S argument, as the court understands it, is that on the basis of this single piece of evidence, the court cannot find that GMD had knowledge of the international origin of the shipment, and therefore GMD cannot be deemed a "successive carrier" of a single operation of transportation within the meaning of Article 1(3).

---

[11] See In Re Air Crash Disaster At Warsaw, Poland, On March 14, 1980, 748 F.2d 94, 96 (2d Cir. 1984) ("Under Article 1(3) all parties—the successive carrier as well as the passenger—must regard the domestic and overseas flights as a single operation.") (citations omitted); see also P. T. Airfast Services v. Superior Court, 188 Cal. Rptr. 628, 633 (App. 1983) ("In order for a flight by a successive carrier to be considered part of an undivided transportation under the Warsaw Convention it must be shown that the parties regarded it as a single operation.").

[12] See, e.g., Stratis v. Eastern Air Lines, Inc., 682 F.2d 406 (2d Cir. 1982) (That all parties considered the successive flights as an "undivided transportation" is clearly shown because the different flight arrangements were made in a single transaction, and the tickets for both the domestic flight and international flights were issued together.); see also In Re Air Crash Disaster at Warsaw, 748 F.2d at 95–96 (Because the domestic and International flight arrangements were separately made and "the [international carrier] had no advance knowledge of the individual domestic flight arrangements, nor were the domestic airlines aware of the intended international flight," . . . "the flights did not constitute one undivided transportation within the meaning of Article 1(3) of the Convention.").

GMD appears to be asking this court to look only to the contract as existed between GMD and American Airlines in determining its status under the Convention. Further, in support of its contention that it should be dismissed because it owes no contractual duty to the consignor, GMD relies on Lufthansa's argument that "the relationship created by the GMD Air Waybill was that of American as a 'shipper' contracting with GMD as a carrier, not that of two successive air carriers. The first and only carrier identified on the GMD Air Waybill was GMD. GMD, as first carrier, clearly was not intended to 'succeed' any other." See Plaintiff's Motion for Partial Summary Judgment at 9. This argument begs the question.

The suggestion here is that the decisive factor in this case is the contract between American Airlines and GMD. Nothing in the Convention compels this approach. It is well established that applicability of the Convention is premised upon the contract of carriage that arises from the relationship between the carrier and the passenger or shipper. See generally Block v. Compagnie Nationale Air France, 386 F.2d 323 (5th Cir. 1977), cert. denied, 392 U.S. 905 (1968). It is also well settled that the terms and conditions of the Convention extend to the agents or employees of the carrier. See Reed v. Wiser, 555 F.2d 1079 (2d Cir.), cert. denied, 434 U.S. 922 (1977). Moreover, this suggestion is misleading, for it would have this court find that GMD had a reasonable belief that American Airlines as the denominated "shipper" in that agreement was in fact the owner of the goods. This clearly cannot be supported. GMD has not refuted American Airlines' allegation that its business practice with GMD was to sub-contract with GMD as a freight forwarder from San Juan to the territories of the U.S.V.I. to transport cargo it could not carry because of weight restrictions. Common sense and practical realities suggest that GMD at least knew it was succeeding American Airlines in the transportation of the cargo, since both American Airlines and GMD are commercial air carriers, rather than shippers. Thus, though the contract between American Airlines and GMD, does not mention the true shipper or the international origin of the cargo, it has not been clearly established to this court's satisfaction that GMD did not at least have constructive knowledge of this fact. A trial on this issue is therefore necessary. Outside of its own air waybill, which simply describes the cargo as consisting of 31 pieces "consolidated as per manifest," an obvious mis-description of the shipment, GMD has offered no

other evidence in support of its Motion for summary judgment. It does not follow therefore that GMD cannot be deemed a "successive carrier" within the definition of article 1(3) of the Convention. Because there are material questions of fact remaining, GMD's motion to dismiss is denied.

An appropriate Order follows.

## ORDER

AND NOW, this 26th day of May, 1992, upon consideration of the Motion for Summary Judgment filed by plaintiff Lufthansa German Airlines, and upon consideration of the Motion for Summary Judgment filed by defendant American Airlines, Inc., and upon consideration of the Motion for Summary Judgment filed by defendant GMD Air Cargo Express, IT IS ORDERED that the Motions are DENIED for the reasons set forth in the accompanying Opinion.